## Spring City Foundry Company, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 21169. Promulgated March 10, 1932.

*Richard H. Tyrrell, Esq.*, for the petitioner.
*L. A. Luce, Esq.*, for the respondent.

## OPINION.

MATTHEWS: 1. The first issue before us is whether the petitioner is entitled to any deduction for the year 1920 on account of the debt owed by the Cotta Transmission Company on its notes and open account in the total amount of $39,983.27. The respondent has allowed $28,715.76, the amount of the debt less the amount received by the petitioner as dividends from the debtor's trustee in bankruptcy, as a deduction in 1923.

The debt was charged off in its entirety on December 28, 1920, by the petitioner in good·faith and in the belief that little, if anything, would be paid by the receiver on its claim, and having charged off the entire amount in 1920, it returned as income in 1922 and 1923 the amounts received in those years as trustee's dividends.

The evidence in this case convinces us that the debt was not entirely worthless at the time of the charge-off on December 28, 1920. The citizens of Rockford had, on November 4, offered to purchase the plant and assets at 33⅓ per cent of the creditors' claims. This offer was declined and the citizens raised it to 40 per cent, payable on or before December 15, the time for payment being extended a week. They were not able, however, to raise the 40 per cent. The creditors then filed a petition in bankruptcy. The inability of the citizens of Rockford to raise the 40 per cent offer, which was accepted, raises doubt as to whether the same persons could have raised even the 33⅓ per cent offer which was rejected. The fact that the creditors filed a petition in bankruptcy at the expiration of the time, as extended, in which the 40 per cent was to be raised indicates that the creditors shared this doubt. It also indicates that they hoped to realize more through bankruptcy proceedings than the citizens of Rockford could pay. However, assuming that the creditors' claims were worth 33⅓ per cent of their face value at the time of the first offer, the effect of the taking over of the property of the debtor by the receiver was to reduce the amount which the creditors would ultimately receive, at least to the extent of the receivership costs. The amount ultimately received—27½ per cent—is strongly confirmatory of this conclusion. Therefore, taking all facts into consideration as they existed at the time of the charge-off of the entire indebtedness, we think that a reasonable estimate of the cost of the receivership would have been at the least an amount equal to the difference between the 33⅓ per cent and the 27½ per cent of the creditors' claims ultimately received. We conclude, therefore, that the debt was worthless to the extent of $28,715.76 at the time of the charge-off on December 28, 1920. As the debt was not wholly worthless when charged off, the question in controversy is whether the petitioner is entitled to any deduction within the taxable year.

Section 234(a) of the Revenue Act of 1918 provides that in computing the net income of a corporation

\* \* \* there shall be allowed as deductions:

\* \* \* \* \* \* \*

(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise;

(5) Debts ascertained to be worthless and charged off within the taxable year;

\* \* \* \* \* \* \*

The petitioner contends that if the whole debt is not deductible as such in 1920, it is still deductible as a loss under the doctrine of *Sherman & Bryan, Inc.* v. *Commissioner*, 35 Fed. (2d) 713, and *Davidson Grocery Co.* v. *Commissioner*, 37 Fed. (2d) 806; that, while

the cases cited allowed a deduction as a loss of that part of the debt which was never collected, they did not so limit the rule; and that petitioner's loss was established by the turning over of the Cotta Company's business to the creditors in October, 1920, or, in any event, by the filing of the petition in bankruptcy and the appointment of the receiver in December, 1920.

As the debt was not wholly worthless in 1920, petitioner did not sustain a loss in that year equal to the total amount of the debt, and the *Sherman & Bryan* decision is not authority for the deduction of the full amount of the debt under such circumstances.

Petitioner further contends that the item of $39,983.27 never was income and should be eliminated from its gross income for 1920; that what is taxed is real and not supposed income. In support of this contention, petitioner quotes extensively from the opinion in *Corn Exchange Bank* v. *United States*, 37 Fed. (2d) 34, a case in which the question involved was whether interest accrued to December 31, 1918, on loans made by the Corn Exchange Bank to a company which went into receivership on December 31, 1918, and of which the taxpayer was advised on December 31, 1918, was required to be included in the return for 1918 as an item of accrued income. The court held that the item should not be treated as accrued income. Petitioner argues that, regardless of questions of deductibility, the deficiency assessed must be set aside upon the ground that it is levied upon an item which never was income.

The item here in question represents the amount due petitioner for goods purchased by its debtor in 1920, and such amount includes the cost to petitioner of the goods sold as well as the expected profit on the sale. We think the cases are distinguishable on their facts.

Finally, petitioner submits that should the Board decide that the full amount of the debt is not deductible either as a bad debt or as a loss, and that the amount in question should not be excluded from gross income, it is entitled, under the decisions in *Sherman & Bryan, Inc.* v. *Commissioner, supra,* and *Davidson Grocery Co.* v. *Commissioner, supra,* to a deduction from 1920 income of at least $28,715.76, the difference between the principal amount of the claim and the dividends received from the trustee in bankruptcy.

The Treasury interpretation of section 234 of the 1918 Revenue Act is that no deduction is allowable under that act for a debt worthless only in part. Article 151, Regulations 45. This Board adopted the same construction in its earlier decisions, and it is urged upon us by the respondent's counsel that the matter is concluded by those decisions, citing *Steele Cotton Mill Co.,* 1 B. T. A. 299; *Murchison National Bank,* 1 B. T. A. 617; *Toccoa Furniture Co.,* 12 B. T. A. 804; *Milwaukee Lumber Co.,* 17 B. T. A. 163; and *Minnehaha National Bank* v. *Commissioner,* 28 Fed. (2d) 763.

All of the decisions cited by respondent were prior to the *Sherman & Bryan* decision and on their facts are distinguishable from *Sherman & Bryan*. In *Minnehaha National Bank* v. *Commissioner*, *supra*, notes either made or endorsed by an individual were written down because the bank officers believed they could not collect the entire amount of the notes. The individual was not in bankruptcy.

In the *Sherman* case the taxpayer, a corporation, was creditor of a motor truck company on an open account. The year involved was the petitioner's fiscal year ending September 20, 1920. In November, 1919, an equity receiver was appointed for the debtor company and the taxpayer filed its claim as a general creditor. No dividend was paid in the taxpayer's fiscal year 1920; and in that year the taxpayer, after investigation, charged off the debt as worthless. The Commissioner disallowed the deduction on the ground that the debt was worthless only in part. A dividend, the amount of which was not shown in evidence, was paid in 1921. The instant case, therefore, appears to be on all fours with the *Sherman* case, so far as all material facts are concerned.

The Circuit Court held that the taxpayer's determination that the debt was wholly worthless in 1920 was not a reasonable conclusion of the taxpayer after an adequate investigation, on this point sustaining this Board's decision in the same case, 9 B. T. A. 213. With respect to the ascertainment of worthlessness, the court said:

* * * * * * *

* * * While we have no doubt of the bona fides of Mr. Sherman's belief that the debt was worthless, we are not convinced that he had ascertained it to be worthless, within the meaning of the statute. To ascertain is to make sure by investigation, and it is conceded that to justify charging off a debt for tax purposes the taxpayer must make a reasonable investigation of the facts and draw a reasonable inference from the information thus obtainable. * * * While creditors are not required to be " incorrigible optimists ", they may not be unduly pessimistic when claiming deductions for worthless debts. We are not satisfied that the petitioning taxpayer's determination that its debt was wholly worthless was a reasonable conclusion after adequate investigation. * * *

The other issue of law considered by the court in the *Sherman* case was the deductibility under the 1918 Act of so much of the debt as was proved worthless. The Government had contended that a debt worthless in part was not deductible under that act and that such construction was supported by the fact that Congress, in the 1921 Act, permitted a deduction for a partial charge-off. The court pointed out that subsequent legislation was not conclusive that the construction claimed for the earlier act must be accepted, and said that " debts ascertained to be worthless " might reasonably be construed to mean " indebtedness ascertained to be worthless " and to

permit a charge-off of such part of a claim as was proven to be uncollectible by so definite an event as seizure of the debtor's property by a receiver. The court held, however, that it was unnecessary to decide this point because "if clause (5) does not permit a deduction, we think it may be made under clause (4)." The Government urged that clauses (4) and (5) were mutually exclusive and that since clause (5) covered losses arising from worthless debts, clause (4) must cover only losses otherwise arising. As to this contention, the court held that since the argument assumes that clause (5) does not permit the charge-off of a debt partially bad, there would seem to be no inconsistency in allowing the partial loss under clause (4), even if the two clauses were deemed mutually exclusive, pointing to the fact that it had not been authoritatively determined that they were mutually exclusive. After quoting from *United States* v. *White Dental Co.*, 274 U. S. 398, to the effect that the statute contemplated the deduction of losses "fixed by identifiable events," and "in the case of debts, by the occurrence of such events as prevent their collection," the court said:

The seizure of the debtor's property by a receiver prevents collection, and definitely fixes the loss to be the difference between the face of the debt and whatever dividend the receivership may pay. The Commissioner's position leads to the conclusion that, if any dividend is likely, no loss can be deducted until the receivership is wound up, which may be many years later. Business men do not carry on their books at face value claims against a debtor in receivership, and it cannot be supposed that the Revenue Act of 1918 was intended to require them to do so. When a creditor's debtor goes into receivership, and the creditor believes the debt to be worthless and charges it off, he recognizes that he has sustained a loss at least to the extent that the receivership dividend which may thereafter be declared leaves the debt unpaid. Presumptively the taxpayer's decision that a debt is worthless, and so charged off, measures his loss. If the Commissioner surcharges his return because of a mistake as to the amount of the loss, we think he should not surcharge for so much of the loss as he admits has been suffered. No judicial decision has been found which contradicts this view.

The *Sherman* case was followed by the District of Columbia Court of Appeals in the *Davidson* case, that case presenting somewhat similar facts, the principal difference being the partial charge-off made by the taxpayer in the latter.

Although in terms the court allowed the deduction of so much of the debt as was determined to be worthless, as a loss, it made the basis of such allowance the ascertainment of worthlessness and the charging off which the statute requires in the case of bad debts, and made it clear that in its opinion the statute respecting the deduction of debts "ascertained to be worthless" did not prohibit the deduction of so much of the claim as was definitely determined to be worthless and charged off. The effect of the court's decision is

to hold that the Revenue Act of 1918 permits a taxpayer to charge off that part of a claim against a debtor in receivership which has been ascertained to be worthless. We agree with this construction and, further, think that the amount thus ascertained to be worthless and charged off in the taxable year is a loss deductible under (5) as a debt ascertained to be worthless and charged off.

A debt which becomes worthless in whole or in part is a loss to the extent of the worthlessness. Such a loss is deductible in the taxable year in which the debt is ascertained to be worthless and charged off. There is no provision in the statute under which such a loss may be deducted in any other year than the one in which the ascertainment of worthlessness and charge-off occur. The statute makes the allowance of a deduction for worthless debts mandatory: " * * * there shall be allowed as deductions, * * * debts ascertained to be worthless and charged off within the taxable year." To hold that the language used applies only to those debts ascertained to be totally worthless and charged off and not to debts ascertained to be worthless in part and charged off, would result in a discrimination between creditors with wholly worthless debts and those with debts worthless only in part. As was said by the court in the *Sherman* case, business men do not carry on their books at face value claims against a debtor in receivership, when it is definitely known that the claims can not be paid in full, and it can not be supposed that the Revenue Act of 1918 was intended to require them to do so until final liquidation of such claims in order to claim any deduction on account of such loss. The change in the Revenue Act of 1921 which allows the deduction of that part of a debt ascertained to be worthless and charged off may well indicate the unexpressed intention of the Revenue Act of 1918; that is to say, the new provision may well be regarded as declaratory of the meaning of the same provision of the 1918 Act. In this view of the matter, that part of a debt which the creditor upon a reasonable investigation of all the facts determines to be worthless and charges off is a " debt ascertained to be worthless and charged off " within the meaning of the statute, and is deductible as such.

In the instant case, as in the *Sherman* case, the petitioner was unduly pessimistic in determining that the debt was totally worthless. A reasonable inference from the facts available at the time of the charge-off justifies the inference that the debt was worthless at least to the extent of $28,715.76, and we think that this amount is deductible in the year 1920.

2. With respect to the second issue, we find, after a careful review of the facts and petitioner's arguments predicated upon

them, no abnormality and therefore no proper basis for special assessment. The petitioner has not established that any ground for special relief exists by reason of its officers' salaries. The application rests, therefore, principally upon the petitioner's allegation that so large a part of the capital employed in its business was borrowed and its statutory invested capital consequently so low as to be disproportionate to the volume of its sales and statutory net income. It was shown that petitioner had an average borrowed capital, based on monthly balances, in 1920, of $114,095.77, and of this amount $89,934.23 constituted " two-name (discounted) paper." Blair, president and treasurer of the petitioner, testified that the figures under this heading represented promissory notes made payable to the petitioner and given to it by its various debtors, which were discounted after indorsement by the petitioner at the bank.

This Board has held that the discounting of negotiable promissory notes does not constitute borrowing capital and is not a pledge of the notes for the amount so borrowed, but is in effect the sale of the notes to the indorsee. *American National Bank of St. Paul*, 14 B. T. A. 476. The Board stated its conclusion therein:

From the cases and texts above cited, it seems to be well settled that to discount negotiable paper is to sell it. We have found no provision in the Reserve Banking Act which changes such generally accepted principle as to transactions between Federal Reserve Banks and member banks. It follows that petitioner sold its rediscounted paper to the Federal Reserve Bank and that such bank thereby became owner in exactly the same sense that petitioner owns the notes it discounts for its customers. The respondent's determination is approved.

If we deduct, then, the amount of discounted paper, we find that the petitioner's average borrowed capital in 1920 was approximately $24,000, or about 15 per cent of the statutory invested capital of $157,000, certainly not a sufficient amount to create an abnormal condition. In *Higginbotham-Bailey-Logan Co.*, 8 B. T. A 566, it was shown that 40 per cent of the petitioner's operating capital was borrowed, but the Board said:

* * * In many businesses this would not be regarded as unusual or abnormal and in the absence of any evidence that it is abnormal in the wholesale dry goods business, there is nothing on which we may base an opinion as to normality or abnormality.

We do not find in the petitioner's situation any abnormality to justify the allowance of special assessment under section 327.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

STERNHAGEN dissents.

MURDOCK, dissenting: The prevailing opinion allows the petitioner to deduct in the year 1920 a portion of a debt owed to it by the Cotta Transmission Company. The Board has consistently held in at least twenty-three cases that under the Revenue Act of 1918 no deduction may be taken where a taxpayer ascertains that a debt is recoverable only in part. It has held that under that act there may be no deduction for a bad debt prior to the time that the taxpayer ascertains that the debt is wholly worthless. The regulations of the Commissioner promulgated under revenue acts prior to the Revenue Act of 1921 have provided to the same effect. Decisions of the Board in which it has made such a ruling have been affirmed on appeal in at least three instances. See also *Selden* v. *Heiner*, 12 Fed. (2d) 474. In two instances such decisions of the Board have been reversed. One of the two cases in which the Board has been reversed on this question is *Sherman & Bryan, Inc.* v. *Blair*, 35 Fed. (2d) 713. There the court did not decide the question whether partial worthlessness could be deducted under the Revenue Act of 1918, but held that in any event the amount could be deducted as a loss. I believe that the bad debt and loss provisions of the revenue acts are mutually exclusive, even though I concede that in ordinary parlance a bad debt would be considered a loss. Cf. *Lafayette Lumber Co.*, 20 B. T. A. 993. The other reversal was in *Davidson Grocery Co.* v. *Lucas*, 37 Fed. (2d) 806, where the court approved the reasoning in the *Sherman & Bryan* case. With all due respect to these courts, I find myself unable to agree with their reasoning and feel that until some more compelling reason appears, the Board should be consistent and follow its former decisions. *Minnehaha National Bank* v. *Commissioner*, 28 Fed. (2d) 763. Cf. *Collin County National Bank* v. *Commissioner*, 48 Fed. (2d) 207.

VAN FOSSAN, MCMAHON, GOODRICH, and LEECH agree with this dissent.