WARD AMES, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 49817. Promulgated January 31, 1933.

*Wendell Davis, Esq., Harry LeRoy Jones, Esq.,* and *George B. Francis, Esq.,* for the petitioner.

*George D. Brabson, Esq.,* for the respondent.

626

### OPINION.

SMITH: The first issue is the deductibility of the claimed loss upon the sale of the balance of petitioner's Class E indebtedness in the amount of $221,788.33 for $100. A similar sale was made in 1927, and a similar deduction allowed. The respondent has disallowed the deduction claimed in 1928 on the ground that the debt was worthless in 1927. The bona fides of neither the 1927 nor 1928 sale is questioned, and the fact that the sales were made to offset gains upon the sales of securities does not make the transaction illegal or warrant the disallowance of the claimed deduction if the taxpayer has in fact sustained a loss upon the sale of his assets. Cf. *James S. McCandless*, 5 B. T. A. 1; *George N. Crouse*, 26 B. T. A. 477.

The record shows that the mining properties were in the process of development up to and including 1927, that most of the indebtedness was incurred for development purposes, which was largely a matter of stripping the overburden of soil from the ore, which then being exposed could be mined more easily and economically. The company had spent nearly $700,000 in this development and its

sintering plant was equipped for profitable production and sale of iron ore. The petitioner was familiar with the physical condition of the properties and the financial condition of both companies at the close of 1927. The first large order had just been received and there was a sufficient ore reserve for profitable operations for many years. The mining and sintering companies, the latter as subsidiary of the former, were actively engaged in business and there was no liquidation of either in 1927 or 1928. At the close of 1927, the balance sheet of the Evergreen Mining Company reflected all of the classified indebtedness due the petitioner and his associates, and the operating deficits of prior years, but aside from the capital expenditures for development it did not reflect the value of the leasehold or the value of the ore reserve, which had become more valuable by reason of the development work.

At the close of 1927 the petitioner held a valid claim against the Evergreen Mining Company, which claim was recognized and carried upon the books of the company as an account payable, pursuant to the agreement for the classification of the indebtedness due the petitioner and his associates for money advanced by them. This is not a case in which the petitioner ascertained the debt to be partially worthless in 1927 and partially worthless in 1928, and claimed deductions in these years for the progressive worthlessness of the debt (cf. *First Nat. Bank of Huntingdon, Pa.*, 23 B. T. A. 7), but one in which a loss is claimed upon the sale of a chose in action. The respondent argues that the " provision in the revenue laws provides for deductions [for losses] in the case of sales for an actual, and not a nominal, consideration. One hundred dollars for a debt of $221,788.33 is not and cannot be regarded as evidence of an actual sale. It speaks for itself and proclaims itself a nominal and not a real consideration." We can not agree with this argument. The evidence by no means shows that the Class E indebtedness of the Evergreen Mining Company was worthless in 1927, or in 1928, the year before us. On brief, the respondent admits that the balance sheet of the company at December 31, 1927, gave the Class E indebtedness some book value. Such Class E indebtedness owed to the petitioner in 1928 represented a cost to him in cash of $221,788.33. The stipulation shows that he sold it within that year for $100. The respondent does not question that the sale was an arm's length transaction. His only contention is that the indebtedness was worthless in 1927 and that the only purpose of the sale in 1928 was to establish a loss which would be a legal deduction from the gross income of 1928. A bona fide sale made for that purpose is not forbidden by the statute. The respondent erred in disallowing the claimed deduction in 1928. Cf. *B. B. Greever*, 6 B. T. A. 587; *Harry*

*H. DeLoss*, 6 B. T. A. 784; affd., 28 Fed. (2d) 803; certiorari denied, 279 U. S. 840; *D. L. Larsh*, 6 B. T. A. 1086; *J. Harvey Ladew*, 22 B. T. A. 443; *George N. Crouse, supra; American Auto Trimming Co.*, 6 B. T. A. 1007; *Mich.* v. *Lucas*, 37 Fed. (2d) 801.

The second issue is the determination of the amount of taxable income realized by the petitioner in 1928 from the receipt of payments aggregating $24,000 from the Barnes-Ames Company. The petitioner reported his income on the cash receipts and disbursements basis. Prior to some date in 1926, the petitioner had loaned the Klearflax Linen Looms Company $165,819.75, which was evidenced by a note bearing interest at 6 per cent per annum and on which the unpaid interest amounted to $50,765.51 on September 3, 1926. On the same date petitioner owed the Barnes-Ames Company the amount of $110,121.18. It was agreed between petitioner and the Barnes-Ames Company that the note should be canceled and that the Barnes-Ames Company should stand indebted to the petitioner in the amount of $106,464.08, which is the exact difference between the face value of the note plus the accrued interest thereon and the $110,121.18 owed by the petitioner to the Barnes-Ames Company. The Barnes-Ames Company was to make payment of the $106,464.08 at the rate of $2,000 per month beginning September 1, 1926, and the company was to pay interest to the petitioner on the account at the rate of 5 per cent per annum. The stipulation is to the effect that of each $2,000 payment to the petitioner " a portion was deemed to constitute interest on the balance of the account then payable and the balance a payment of the principal of the account." The petitioner contends that the value of the account to the petitioner on or about September 3, 1926, was $106,464.08 less $8,500, and that the only portion of the $24,000 received in 1928 which constitutes taxable income is the portion representing interest upon the unpaid balance as of the date of each payment and the accrued discount. This was the basis upon which the petitioner's tax liability for the year 1929 was settled and it is agreed that if this is a proper basis of settlement for the year 1928 the only taxable income received by the petitioner from the $24,000 in 1928 is $3,533.61 representing interest and $1,634.02 representing realization of the discount.

The respondent contends, however, that this was not a correct settlement; that there was no realization of income by the petitioner in 1926, when he turned in his note receivable from the Barnes-Ames Company in consideration of the cancellation of his indebtedness to it, and a credit upon its books in his favor of $106,464.08 to be paid at the rate of $2,000 per month with interest at 5 per cent per annum.

The record is silent as to whether the petitioner accounted for any profit in his 1926 return from the exchange of his note of the Barnes-Ames Company for a cancellation of his indebtedness to that company plus an open account receivable. Presumably not, for the petitioner in his 1928 return reported the entire $24,000 received in 1928 as taxable income. The petitioner was on a cash receipts and disbursements basis. The case of *John B. Atkins*, 9 B. T. A. 140, was one involving an exchange of property for other property and cash in deferred payments. The question there was whether the petitioner, being on the cash receipts and disbursements basis, had any taxable income from the exchange transaction. We there stated:

* * * So far as we have been able to ascertain, a promise to pay evidenced solely by an open account has never been regarded as income to one reporting on a cash basis by the Bureau of Internal Revenue. Certainly this is true in the absence of any showing that the amount was immediately available to the taxpayer. The Board has further held that income was not constructively received by the mailing of a check, *Louis Titus*, 2 B. T. A. 754, or the entry on the books of a corporation of the amount of salary due when in fact money was not available to make payment, *A. L. Englander*, 1 B. T. A. 760. * * *

* * * * * * *

* * * While no categorical answer is available and the facts in each case must be closely scrutinized, we believe that in the case of one reporting income on the receipts and disbursements basis only cash or its equivalent constitutes income. * * *

Clearly, the total profit to be realized by the petitioner from the payments to be received by him from the Barnes-Ames Company was $50,765.51 plus interest at the rate of 5 per cent per annum upon deferred payments. In his brief the respondent contends that as soon as the petitioner began to receive the deferred payments of $2,000 per month he began to realize part of his profit in the proportion that the amount of gross profit bore to the principal sum, that is, as $50,765.51 is to $106,464.08; that each monthly payment of $2,000 included interest at 5 per cent per annum on the principal yet unpaid plus a realization of profit of $\frac{50,765.51}{106,464.08}$ of the payment after deducting the above interest plus a return of principal consisting of the balance of the payment.

We are of the opinion that the respondent is correct in treating a portion of each payment of $2,000 as consisting of one month's accrued interest upon the balance owing for the monthly payment and that the balance of the payment represents in part a realization of profit and in part a return of capital.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*