KATHARINE H. PUTNAM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 64282. Promulgated October 3, 1934.

*Edward C. Thayer*, Esq., and *Earle W. Carr*, Esq., for the petitioner.

*R. W. Wilson*, Esq., for the respondent.

OPINION.

SEAWELL: Respondent determined a deficiency in the income tax of petitioner for the year 1929 in the sum of $17,317.78, of which sum $8,749.87 is in controversy. The controversy arises from the disallowance by the respondent of a claimed deductible loss of $69,999, subject to the provisions of section 101 of the Revenue Act of 1928, resulting from the sale of certain notes, aggregating $70,000, of the Newfield Corporation sold by petitioner in the taxable year for $1.

Petitioner is the wife of George Putnam and they are citizens and residents of Manchester, Massachusetts. George Putnam from about 1919 to 1923 was a member of the partnership of Richardson,

Hill & Co., investment brokers of Boston, hereinafter called the partnership. In 1919 the partnership purchased from the International Products Corporation certain of its capital stock for which they paid $1,440,000. The partnership's assets became depleted and at the requirement of certain bankers the Newfield Corporation, hereinafter called Newfield, was organized, and certain of the assets of the partnership transferred to it, and it assumed the partnership debts to the bankers, the individual partners becoming sureties on Newfield's notes. Later, to clarify the situation, Newfield received cash or its equivalent from the individual partners, and in 1923 gave to each its own 5-year series C notes representing the amount which it had received from the various individual partners. George Putnam received in this way notes for which he paid par. In 1928 he had on hand $142,000 of those notes and that year gave to petitioner $72,000 thereof for her use in obtaining a reduction in her income taxes for the year. The $72,000 of notes were sold by George Putnam for the account of petitioner for $1 and a capital net loss for the difference was taken and allowed on her income tax return for the year 1928. In 1929, the taxable year before us, George Putnam gave the remaining $70,000 of the notes to the petitioner for a similar use in that year. George Putnam had a power of attorney from his wife to manage her financial affairs, keep her books of account, make out and verify her income tax returns, and generally to act in her behalf. On July 8, 1929, he sold for petitioner's account said $70,000 of Newfield notes for $1 net, and petitioner claimed in her return for the year as a deductible loss the difference, $69,999. This loss was disallowed by respondent on the ground that the notes were worthless in 1928 and known to be such by petitioner prior to the taxable year 1929.

At the conclusion of the evidence offered in the proceeding counsel for respondent claimed an additional ground for disallowance of the loss. He contended that the evidence failed to show that George Putnam had given petitioner the notes. The evidence of the gift was slight. Superficially examined, it shows an attempt to donate a loss rather than notes. But in his opening statement of the case respondent's counsel said, *inter alia*:

* * * So that at the beginning of 1928 we find the petitioner's husband was the owner of $142,000 worth of these notes, and during that year 1928 he gave to his wife, the petitioner, $72,000 worth. The remaining $70,000 worth were given to her in the taxable year 1929.

This statement by respondent's counsel on the trial relieved petitioner of the burden of proving the fact which is therein admitted. For this reason we sustain the petitioner as to the gift of the notes without any analysis of the evidence bearing on the point.

The amount of the deduction is being claimed as a loss resulting from the sale as distinguished from a debt ascertained to be worthless and charged off within the year. Section 23 (e) of the 1928 Act allows as deductions "* * * losses sustained during the taxable year and not compensated for by insurance or otherwise * * *" and subsection (j) of the same section permits the deduction of "Debts ascertained to be worthless and charged off within the taxable year * * *." These provisions of the act are mutually exclusive. Clearly the claimed deduction falls within section 23 (j). *Spring City Foundry Co.* v. *Commissioner*, 292 U.S. 182, affirming 67 Fed. (2d) 385, which reversed 25 B.T.A. 822.

Among the book assets of Newfield as of the close of 1928 was an item of $1,578,684.68 representing an accrual of a pending equity suit instituted by the partnership against the International Products Co. and its directors for $1,440,000 and interest, based upon an alleged right to rescind the contract under which the partnership had purchased stock of the defendant corporation. In maintaining that the notes did not become worthless until the suit was finally concluded, counsel for the petitioner concedes that without the pending suit the notes had no value.

The suit was instituted in about 1924. The trial court held in favor of the defendants on November 10, 1925, on the ground that the plaintiffs' laches estopped them from disavowing the contract. *Hill* v. *International Products Co.*, 220 N.Y.S. 711. The judgment was affirmed by the Supreme Court of New York, Appellate Division, April 12, 1929, 233 N.Y.S. 784, and on July 11, 1929, the Court of Appeals of the State of New York denied the motion of the appellants for leave to appeal the case to that court.

The petitioner and her husband testified that they believed the suit would eventually end favorably for the plaintiffs, and, if so and the judgment were collected, that the notes would have some value, the husband's testimony being that the notes would be worth from 10 to 30 percent of their face amount. We have not been furnished with the basis for their opinions as to the probable worth of the notes, based upon the outcome of the suit, and we know nothing about the financial responsibility of the defendants in the case to satisfy any judgment that might have been obtained against them. If we were to assume that a judgment for $1,440,000, the principal amount of the claim, plus interest, which at the close of 1928 amounted to about $850,000, could have been recovered, we could not say that any part of it could have been used to satisfy the series C notes, part of which were held by the petitioner. The book assets of Newfield as of December 31, 1928, including the item for the pending suit, were only $3,733,200.52, and the corporation's liabilities

at that time were $5,664,346.63, leaving a deficit of $1,931,146.11. Of the liabilities, $4,405,000 in round numbers represented obligations under two issues of notes other than series C notes in the face amount of $1,259,000. A bank owned about $2,650,000 of the corporation's series A notes. No evidence was offered as to the value of the assets and, excepting cash on hand of about $14,000, we are in no position to place ·a value on the corporation's property. Without evidence proving the fact we can not find that the series C notes had priority over the other obligations of the corporation. Neither does the record show what prospects, if any, the corporation had of improving its financial condition. There was some question about the assignability of the partnership claim to Newfield, and we have only the statement of counsel for the petitioner that arrangements were made to place any proceeds derived from the suit in trust for the benefit of the corporation. Thus there is doubt whether Newfield would have received the proceeds of any judgment obtained in the action.

We seriously doubt whether the petitioner and her husband placed as much reliance upon the pending claim as their testimony indicates. The husband testified in the suit and the petitioner manifested interest in the proceedings. The husband knew nothing about the case from November 1925, when the unfavorable decision was rendered by the trial court, until the spring of 1929, when he learned that the judgment of the trial court had been affirmed and that an appeal would be taken to the Court of Appeals. He did not learn of the decision of that court until August or September 1929. The petitioner did not follow the case through the appellate courts any closer. Having sold $72,000 face value of the notes in 1928, and $70,000 on July 8, 1929, three days before the order of the Court of Appeals was signed, for nominal amounts, it seems apparent that the petitioner and her husband were convinced that the pending suit added little, if anything, to the value of the notes; otherwise they, or one of them, would have made inquiry about the status of the suit before making the sales. The petitioner's husband did not consult the balance sheets, reports of operations, or officers of the corporation prior to the sales. The inference to be drawn from this condition of the record is that the petitioner, or her attorney in fact, had ascertained from other sources prior to the 1928 sale that the notes were worthless.

The respondent found that all of the donor's notes became worthless in 1928. The evidence before us sustains, rather than overcomes, that determination. We are also of the opinion, and so hold, that the donor and donee ascertained all of the debts to be worthless in 1928. Having made such a determination, the then owner of the notes in question was required to deduct his loss in that year.

He could not carry the deduction over to the next year. *Avery* v. *Commissioner*, 22 Fed. (2d) 6; *Stephenson* v. *Commissioner*, 43 Fed. (2d) 348.

The petitioner relies upon *Ward Ames, Jr.*, 27 B.T.A. 624; affd., 71 Fed. (2d) 939. Cases of this sort must be decided upon their peculiar facts. From the facts prevailing there the conclusion was reached that the entire indebtedness was not worthless prior to the taxable year. Here the evidence establishes that all the notes were ascertained to be worthless in 1928.

Section 113 of the Revenue Act of 1928 provides that where property is acquired by gift after December 31, 1920, as here, the basis for determining gain or loss from the sale or other disposition thereof " shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift." The donor's right to claim a deduction for ascertainment of worthlessness of the debts having expired with the close of 1928, thereafter he had no basis for deduction purposes. Obviously, the donee acquired no greater rights than the donor had at the time of the gift.

*Judgment will be entered for the respondent.*