*Decision will be entered under Rule 50.*

---

ALVINA LUDORFF AND EMMA C. MEISSNER, AS EXECUTRICES UNDER THE LAST WILL AND TESTAMENT OF ALBERT LUDORFF, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89212. Promulgated June 7, 1939.

*Laurence Arnold Tanzer, Esq., Eugene L. Mullaney, Esq.*, and *John W. Townsend, Esq.*, for the petitioners.

*E. O. Hanson, Esq.*, and *Thos. H. Lewis, Jr., Esq.*, for the respondent.

34

OPINION.

DISNEY: The basic facts, including the bases for the various blocks of stock acquired by petitioners' decedent before and after March 1, 1913, and the amount and time of receipt of the liquidating dividends, are not in dispute. The broad issue is the amount of gain includible in income for the taxable period. This in turn depends upon the proper method of computing the profit. Petitioners insist that the amount is the figure resulting by treating each payment as yielding

its proportion of profit when received. The method they advance is the same as that provided by statute for reporting gain on installment sales, but no contention is being made that the installment provisions (sec. 44, Revenue Act of 1934) are applicable. Respondent contends, in general, that there can be no gain on liquidating dividends until the stockholder recovers his capital investment and when that occurs, subsequent distributions constitute gain in their entirety.

Section 115 (c) of the 1934 Act provides that "* * * amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock" and that the gain "* * * to the distributee resulting from such exchange shall be determined under section 111 * * *." It further provides:

* * * In the case of amounts distributed (whether before January 1, 1934, or on or after such date) in partial liquidation * * * the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits within the meaning of subsection (b) of this section for the purpose of determining the taxability of subsequent distributions by the corporation.

Subsections (a) and (b) of section 111 read:

(a) COMPUTATION OF GAIN OR LOSS.—The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113 (b) for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized.

(b) AMOUNT REALIZED.—The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received.

Section 111 (c) provides for the recognition of gain to the extent provided for in section 112. The distributions here do not come within any of the exceptions set out in section 112 and consequently the entire amount of gain must be recognized in accordance with section 112 (a).

Section 113 (a) provides that the basis of property shall be cost, except that in case the property was acquired prior to March 1, 1913, if the adjusted basis is less than the fair market value of the property as of March 1, 1913, then the basis shall be such fair market value.

Section 113 (b) (1) (D) provides as follows:

(b) ADJUSTED BASIS.—The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

(1) GENERAL RULE.—Proper adjustment in respect of the property shall in all cases be made—

* * * * * * *

(D) in the case of stock (to the extent not provided for in the foregoing subparagraphs) for the amount of distributions previously made which, under the law applicable to the year in which the distribution was made, either were tax-free or were applicable in reduction of basis * * *.

The Revenue Act of 1932 provides for the computation of gain or loss in a like manner.

Petitioners concede that the amounts distributed in 1933 and 1934 were distributions in partial liquidation within the meaning of section 115 (h) of the Revenue Act of 1932 and section 115 (i) of the Revenue Act of 1934. The amounts so distributed are by the statute "treated as in part or full payment in exchange for the stock." Sec. 115 (c), 1932 and 1934 Acts, *supra*. Other provisions definitely provide for the recognition of prior distributions applicable in reduction of basis in arriving at the adjusted basis for determining gain or loss. Sec 113 (b) (1) (D), 1932 and 1934 Acts, *supra*. If one of a series of distributions in complete liquidation was intended by the statute to give rise to taxable gain to the extent that the payment constituted profit, computed in the manner contended by petitioners, there would be no need for a provision of this sort requiring adjustments to the subbase for distributions in prior taxable years. Read together, as they must be, these statutory provisions disclose a purpose to delay the imposition of a tax on liquidating dividends until the amount of the distributions exceeds the stockholder's basis. This Board and the courts have thus construed the provisions. In *Florence M. Quinn*, 35 B. T. A. 412, we rejected a theory that one or more of a series of distributions in complete liquidation, accompanied by a surrender of one share of stock for each $100 distributed, could be treated as a separate sale of the stock surrendered and thus reduce the aggregate basis of the stock. In *Letts* v. *Commissioner*, 84 Fed. (2d) 760, affirming 30 B. T. A. 800, it was held that so much of the final liquidating dividend received in 1927 as exceeded the stockholder's aggregate basis, as reduced by prior distributions, constituted taxable gain. The effect of this ruling is that the distributions prior to 1927 merely served to reduce the stockholder's capital investment. See also *Hellman* v. *Helvering*, 68 Fed. (2d) 763.

These decisions are consistent with the general rule that the income tax laws reach only realized gains and losses, *Lucas* v. *American Code Co.*, 280 U. S. 445, and that a taxpayer is entitled to a restoration of his capital investment before being called upon to pay a tax on profit. *Doyle* v. *Mitchell Brothers Co.*, 247 U. S. 179; *Burnet* v. *Logan*, 283 U. S. 404. Here the distributions in 1933 applicable to the shares of stock held less than two years were less than petitioners' decedent's cost basis therein, and if we were to follow the petitioners' method of computing and reporting gain, taxable income would result from such payments prior to the return of capital. Obviously such a course should not be followed without clear legislative authority.

The method advanced by petitioners for the computation of gain is based upon the theory that at the close of 1933 it was known that the remaining liquidating dividends would aggregate $112.50 per share.

The claim lacks proof. Prior to December 15, 1933, dividends of $200 per share had been distributed. The book value of the corporation's net assets on December 15, 1933, was $346,869.42 or $115.01 per share. At that time the corporation had as assets numerous accounts receivable and an interest-bearing mortgage, payable at the rate of $50,000 semiannually, with the right to anticipate payments. Obviously the bare terms of the instrument furnish no means for accurately determining at the close of 1933 the amount ultimately to be recovered from the claim, and nothing was offered in evidence to prove that as of December 31, 1933, there was any assurance that $150,000 would be paid on the debt in January 1934 and the balance sold two months later.

At that time the corporation's tax liability for 1932 and 1933 had not been determined. Additional tax for 1932 was paid after December 31, 1933, and the corporation's 1933 tax liability was not determined until 1935 and was the subject of a refund claim filed in December 1937. It actually filed an amended return in March 1934 for 1933 disclosing additional tax liability, which the corporation paid in installments in 1934. It had income in 1934, and as of the close of the year accrued an amount on its books for tax thereon. Under the circumstances, we think the record lacks proof that as of the close of 1933 it could reasonably be determined that future distributions in complete liquidation would amount to $112.50 per share. No effort was made to establish that the rights of the stockholders to participate in further distributions in liquidation had a fair market value at that time of a like amount.

In *Burnet* v. *Logan*, *supra*, the respondent sold her stock for cash and an agreement of the buyer to pay the additional amount of 60 cents per ton for ore removed from a certain mine. It was held that, as the promise to pay was contingent upon facts incapable of foretelling with reasonable certainty and had no ascertainable fair market value, the transaction could not be regarded as a closed one or give rise to taxable gain until the seller recovered her capital investment. Here there was no unconditional promise to distribute a definite sum of money, and the corporation could have abandoned dissolution proceedings at least not later than April 1934, when it filed a certificate of dissolution by appropriate action of its stockholders. As just shown, it was unknown as of the close of 1933 what additional amounts the corporation would distribute as liquidating dividends and no attempt was made to prove that the rights of the stockholders to their proportionate share of the assets of the corporation in liquidation had a fair market value at the close of 1933 of $112.50 per share or any other amount. In both cases future payments were uncertain; in the *Logan* case they lacked fair market value and here there is no proof of fair market value. Thus if it could be said that the petitioners' method of

computing the profit taxable each year has statutory approval, without proof of one of the essential factors it could not be applied here.

The ruling made in O. D. 343, C. B. No. 1, p. 80, cited by petitioners, was not intended to be applicable to facts prevailing here. That is clearly shown by more recent rulings. O. D. 461, C. B. No. 2, p. 85; I. T. 2246, C. B. IX–2, p. 14.

The case of *Commissioner* v. *Winthrop*, 98 Fed. (2d) 74, affirming 36 B. T. A. 314, involved a loss, not the question of apportionment of gain on the redemption of stock by a series of distributions during more than one taxable year. There the future distributions could be determined with reasonable certainty and the certificate received to evidence the stockholder's right to a final distribution had a value susceptible of determination.

Petitioners urge the applicability of sections 41 and 42 of the Revenue Act of 1934. These sections require the computation of net income on an annual basis in accordance with the accounting method regularly employed by the taxpayer, but if he has no such method of accounting or the one used does not clearly reflect income, the computation shall be made in such manner as in the opinion of the Commissioner does clearly reflect income.

The revenue acts are designed to produce revenue at regular intervals based upon the operations of taxpayers within the taxable year. *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359. Here the petitioner's decedent kept his books and filed his returns upon the cash basis, a recognized method of accounting for tax purposes, and the facts and the question involved herein do not require a computation of gain by an accounting method other than that regularly employed to return income.

The cases cited by petitioners in their argument on the applicability of sections 41 and 42 have been examined and found to be either distinguishable or not in point. For instance, in *Ward Ames, Jr.*, 27 B. T. A. 624; affd., 71 Fed. (2d) 939, it was agreed that each payment included a return of capital and income and the only question was the amount thereof. Some of the cases involved facts similar to *Burnet* v. *Logan, supra*, and were decided prior and contrary to the rule announced in that case. In other cases, the question turned upon whether gain should be computed upon a single basis or a basis for each unit of property acquired as a whole.

The method followed by respondent in computing the gain is sustained.

*Decision will be entered for the respondent.*