Lothrop Withington v. Commissioner.
Withington v. Commissioner
Docket No. 112219.
United States Tax Court
1944 Tax Ct. Memo LEXIS 230; 3 T.C.M. (CCH) 510; T.C.M. (RIA) 44183; May 30, 1944
*230 John S. McCann, Esq., for the petitioner. Melvin S. Huffaker, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: This proceeding is brought for a redetermination of a deficiency of $4,687.73 in petitioner's income tax for the year 1939. The question presented is whether petitioner sustained a deductible loss in 1939 upon the sale of trustees' receipts representing 145 shares of the common stock of a corporation resulting from a reorganization. Findings of Fact The stipulated facts are hereby found accordingly and facts hereinafter appearing which are not derived from the stipulation are otherwise found from the record. Petitioner is a lawyer with offices in Boston, Massachusetts. His income tax return for 1939 was filed on a cash basis with the collector at Boston, Massachusetts. Bay State Road Company, Inc., a Massachusetts corporation, during the period of its existence, was the owner and operator of a hotel known as the Sheraton Hotel, located on Bay State Road in Boston. The hotel business was its only business. Between 1924 and 1929 petitioner acquired $55,000 face amount of second mortgage seven percent gold bonds of the Bay State Road *231 Company having a "value" of $49,500, and 290 shares of $100 par value preferred stock having a "value" of $28,400. Petitioner also held Bay State Road "notes," none of which are directly involved herein as the case is presented. The interest due November 1, 1931, on the second mortgage bonds held by petitioner became in default and was not paid at that time or thereafter. In his income tax return for the year 1931 petitioner reported a net income of $23,018, exclusive of capital losses. In computing this income he deducted as "bad debts" the amounts of $13,970.84 which he explained as "Notes of Bay State Road Co. which were ascertained during year 1931 to be of no value, a default having occurred on both First & Second Mtge. bonds, & property having been sold for taxes." The claimed loss was allowed in the full amount. In his 1931 return petitioner also claimed as a deduction the amount of $24,999 from the sale for $1.00 of 250 shares of preferred stock of the Bay State Road Company, it being stated that: "During year 1931 stock determined to be worthless following default on First & Second Mortgage bonds & sale of property for taxes, & sold for nominal sum." The 1931 return was *232 filed showing no taxable income and no tax liability. In order to establish proof of the losses petitioner on December 30, 1931, had sold to his secretary 250 shares out of his 290 shares of preferred stock in the Bay State Road Company, and the notes of that company for her promissory note of $101, of which $100 was applicable to the notes. Transfer stamps were put on the preferred stock thus sold by petitioner; the stock was transferred and registered on the corporate books in the name of the secretary. The transfer by petitioner to his secretary was conditioned on the loss thereon being allowed by respondent. In 1934 a revenue agent examined petitioner's 1931 return and disallowed the claimed loss of $24,900 on the preferred stock with a resulting deficiency of $610.97. The reason assigned for the disallowance was "* * * that facts do not justify the claim that the stock had no value on December 31, 1931 * * *." The loss of $13,970.94 on the notes was not disturbed. Petitioner accepted and paid the deficiency thus determined. Upon this adjustment on his 1931 return petitioner affirmed the sale of the notes and rescinded the sale of the preferred stock to his secretary. On *233 his income tax return for 1932 petitioner claimed and was allowed a loss "from the sale of assets held more than two years" upon the sale at auction on December 31, 1932, for $10 net of $35,000 face value second mortgage bonds of the Bay State Road Company. During the year after 1931, including 1934, the Bay State Road Company operated with substantial losses. The balance sheet as of September 28, 1934, filed at the request of the District Court of the United States for the District of Massachusetts in connection with a reorganization proceeding under section 77B of the Bankruptcy Act, as amended, showed a deficit of $6,986.71 without taking into consideration the 2,414 shares of $100 par value preferred stock ($241,400) and the value of the 2,446 shares no par common. The balance sheet further showed an excess of current liabilities over current assets of approximately $85,000. After "selling" the 250 shares of preferred stock and claiming the loss thereon in 1931 petitioner still retained 40 shares of preferred stock. After selling at auction in 1932 the $35,000 face value second mortgage bonds for the net amount of $10 and taking the loss therefrom in 1932, petitioner still retained *234 $20,000 face value of such bonds. The 250 shares of preferred stock transferred by petitioner to his secretary in 1931 were transferred to her name on the books of the Bay State Road Company in that year and so remained throughout the ensuing reorganization proceeding and until May, 1936. On September 28, 1934, the Bay State Road Company filed a petition in the District Court of the United States for the District of Massachusetts for a reorganization under the provisions of section 77B of the Bankruptcy Act, as amended, which petition was approved by the Court on that day. On December 24, 1934, pursuant to court order, a plan of reorganization was filed, and on the same day the Court entered an order confirming the plan. The plan of reorganization called for the creation of the new corporation. The Sheraton, Inc., with an authorized capital stock of 6,400 shares of no par value common; a loan of $100,000 on bonds secured by a new first mortgage was to be obtained for the new corporation. The old first and second mortgages were to be cancelled and discharged and holders of the old first mortgage bonds were to receive second mortgage bonds of the new corporation in the ratio of $50 *235 in principal amount of new bonds to $100 in principal amount of old bonds, with accrued interest waived. The holders of the old first mortgage bonds were to receive, in addition, one share of new common stock for each $50 principal amount of new bonds, requiring a distribution among the bondholders of 4,715 shares of new common stock. It was contemplated that the holders of old second mortgage bonds, and the holders of notes payable, and the stockholders as a group would obtain part of new company's common stock. A descriptive diagram of the reorganization plan in substantially the manner in which it was effectuated is as follows: Bay State Road
Ratio of
Company, Inc.
Exchange
The Sheraton, Inc.
$100,000 1st Mtge. $50
235,700 2nd Mtge.
$471,500 1st Mtge. Bonds
$ 100 for [and
1 share
4,715 shs. Com.
74.66%
$200,000 2nd Mtge. Bonds
$ 223 for 1 share
997 shs. Com.
15.78%
$67,680.86 Notes
$ 223 for 1 share
203 shs. Com.
3.22%
2,414 shs. Pfd
6,035 shs. for 1 share
400 shs. Com.
6.34%
Total
6,315 com. shs.
100.00%
It was further provided that all costs of administration and other allowances made by the *236 Court were to be paid in cash by the new corporation. It was contemplated that a large part of the cash proceeds of the $100,000 loan was to be used to dispose of priority claims of the City of Boston for unpaid taxes and water rent. On April 6, 1936, the Court entered its final decree. Pursuant to the Plan petitioner surrendered 40 shares of preferred stock and received in exchange therefor a trustees' receipt, representing the beneficial interest in 7 shares of common stock of The Sheraton, Inc., the new corporation. Petitioner received for his $20,000 face value second mortgage bonds (which he still retained and for which he had not in prior years claimed a tax deduction) a trustees' receipt for 89 shares of the common stock in the new corporation. He also received, pursuant to the Plan, 9 shares for notes of the old corporation which are not pertinent here. Pursuant to the Plan petitioner's secretary on May 2, 1936, received for the 250 shares of the preferred stock held in her name for petitioner, a trustees' receipt for 40 shares of common stock in the new corporation. On May 6, 1936, the secretary transferred to petitioner the trustees' receipt for the 40 shares, and on *237 June 22, 1936, a new trustees' receipt therefor was issued in the name of petitioner. On February 25, 1939, petitioner sold his voting trust certificates representing 145 shares of common stock of The Sheraton, Inc., to Charles River Company for $3.00 a share. In his 1939 return petitioner claimed a long-term capital loss upon the sale of the trustees' receipts which he had acquired in 1936 in the reorganization proceedings. Petitioner used as a basis in determining such loss his original cost of $48,325, which amount included his original cost of the bonds and preferred stock (plus a small amount of notes) of the old company. In his 1939 income tax return petitioner described the trustees' certificates as having been capital "received in reorganization of Bay State Road Company in 77B proceedings for second mortgage bonds, notes and preferred stock." The claimed loss was disallowed by respondent. Opinion As this proceeding comes before us two broad questions are presented. Both have to do with petitioner's basis for securities which he sold in the instant year, the first involves the necessity of reducing that basis by reason of an intervening reorganization in connection with *238 which it is respondent's contention that gain or loss was recognizable and a new basis accordingly acquired. The second is whether petitioner's prior dealing with the antecedent securities was such that his basis was reduced irrespective of the reorganization. When the hearing was held and the original briefs filed the problem presented by the first issue was the extent to which under doctrine analogous to Helvering v. Cement Investors, Inc., 316 U.S. 527, the 77B reorganization through which the issuer of the securities passed established a nonrecognition situation. Subsequently, however, the enactment of Revenue Act of 1943 injected an element which petitioner asserts in a supplemental brief and which we agree raised a new preliminary question. That legislation in section 121 (b) provides: (1) General Rule. - No gain or loss shall be recognized upon an exchange consisting of the relinquishment or extinguishment of stock or securities in a corporation the plan of reorganization of which is apporved by the court in a proceeding described in subsection (b)(10), [under section 77B of the National Bankruptcy Act] in consideration of the acquisition *239 solely of stock or securities in a corporation organized or made use of to effectuate such plan of reorganization. (2) Exchange Occurring in Taxable Years Beginning Prior to January 1, 1943. - If the exchange occurred in a taxable year of the person acquiring such stock or securities beginning prior to January 1, 1943, then, under regulations prescribed by the Commissioner with the approval of the Secretary, gain or loss shall be recognized or not recognized - (A) to the extent that it was recognized or not recognized in the final determination of the tax of such person for such taxable year, if such tax was finally determined prior to the ninetieth day after the date of the enactment of the Revenue Act of 1943; or (B) in cases to which subparagraph (A) is not applicable, to the extent that it would be recognized or not recognized under the latest treatment of such exchange by such person prior to December 15, 1943, in connection with his tax liability for such taxable year. Thus, gain or loss is to be recognized or not, depending upon how it was treated in a final determination of the taxpayer's tax liability for the year of exchange or, failing this, upon how the taxpayer *240 himself treated it in the latest reference to his tax liability for such year. It may be noted parenthetically that no regulations have as yet been provided. The parties appear to accept 1935 as the year of exchange. It does not appear from the record that any action constituting a final disposition of that year's tax liability has occurred, such as "a decision of a court or the Board of Tax Appeals, or a closing agreement, or the expiration of the statutory period of limitation upon the making of a claim for refund or the issuance of a statutory notice of deficiency." [1] However, the only aspect in which this portion of the relief provision would operate as any derogation of petitioner's contention would be the existence of some such disposition and the resulting establishment of the exchange as the occasion of gain or loss recognition, and as to this respondent states in his supplemental brief "there has been no final determination for the year 1935, unless the action of the Commissioner in accepting the 1935 return as filed can be said to be a 'final determination'." The only other situation in which *241 a new basis would be acquired, by reason of prior recognition of the tax effect of the transaction, is an earlier treatment by the taxpayer himself ascribing that effect to the exchange. We cannot disregard the manner in which the present question came into controversy nor overlook the fact that when the original hearing took place there was no indication of any necessity that these facts should be meticulously developed by evidence. If reasonably equitable, the inconvenience and expense of requiring parties at a distance to appear for a supplemental hearing is to be avoided. Consequently, when respondent in his supplemental brief "concedes that the petitioner did not claim a deduction in his 1935 return for loss resulting from the exchange," and when it is so clearly manifest that the exchange resulted in a loss and that the means by which any consequent tax benefit would become available to petitioner was by way of a loss deduction in that year, we consider ourselves compelled in the absence of any countervailing evidence to conclude that the antecedent treatment accorded to the transaction by petitioner was that of non-recognition. We are accordingly of the opinion that application *242 of the provisions of the 1943 Act requires treatment here of the prior exchange as one in which gain or loss is not to be recognized, irrespective of what the conclusion might have been prior to the enactment of that legislation. Petitioner's basis for the securities sold would accordingly be his original cost under Internal Revenue Code, section 113 (a) unless some adjustment is required under subsection (b). By reference to subdivision (2) thereof we find that any adjustment called for must equally be made to the basis for the antecedent stock and bonds to ascertain the "substituted basis," since it is also necessary to make "reference to other property held at any time by the person for whom the basis is to be determined." An examination of the instances requiring adjustment reveals that the only one apparently of possible application here is "for * * * losses or other items properly chargeable to capital account." Notwithstanding this, or possibly in effectuation of it, we recognize that a taxpayer may so deal with acquired property as to bring about a change in its allocated basis by means, among other things, of the course adopted as a matter of tax treatment. Specifically, *243 a deduction for loss or worthlessness registered for income tax purposes in an earlier period may decrease or eliminate an otherwise acquired basis. Bank of Newberry, 1 T.C. 374. We know of no rule, however, which requires a taxpayer to assert the fact of worthlessness or avail himself of its tax consequences at any given period. His failure to do so may, it is true, prohibit the deduction as a loss in some other year. Frank C. Rand, 40 B.T.A. 233, affirmed (C.C.A., 8th Cir.), 116 Fed. (2d) 929, certiorari denied, 313 U.S. 594. The sale in the year before us, however, for $3.00 a share was no purely perfunctory manipulation for a merely nominal consideration, such as four-fifths cents a share as in Frank C. Rand, supra.On the other hand, while it is difficult to be certain of the precise effect of Ward Ames, Jr., 27 B.T.A. 624, affirmed (C.C.A., 8th Cir.), 71 Fed. (2d) 939, there can be little doubt of its similarity to the present situation. It may be that under the circumstances *244 disclosed in that proceeding, and in this, the earlier indication of loss has to be revised to comport with other evidence, and that the most that can then be said is that prior ascertainment would encompass a debt worthless only in part. See Katherine H. Putnam, 31 B.T.A. 241, 245. In that event there would be no necessity that the creditor avail himself of the contemporaneous deduction at his peril. Moock Electric Supply Co., 41 B.T.A. 1209. Or it may be that a subsequent sale, the good faith of which is not questioned, is effective as the occasion for a loss deduction, notwithstanding that the debt was at one time worthless. In that event, the significant inquiry would be whether the creditor had lost his basis for tax purposes by availing himself of a prior deduction. See Bank of Newberry, supra.At any rate, we said in the Ames case: * * * The respondent does not question that the sale was an arm's length transaction. His only contention is that the indebtedness was worthless in 1927 and that the only purpose of the sale in 1928 was to establish a loss which would be a legal *245 deduction from the gross income of 1928. A bona fide sale made for that purpose is not forbidden by the statute. The respondent erred in disallowing the claimed deduction in 1928. * * *. We say the same here. It is possible to confuse the charge-off of one specific security with another not so treated although issued by the same obligor and potentially susceptible of the same treatment. It is also possible to confuse the outright sale of property which, having been disposed of, would neither retain nor require any continuing basis for the vendor, with an attempted deduction for the loss of value of property, title to which is still held. But unless we do one or the other, it seems impossible to sustain respondent's position as to the property involved here. Some of the stock which petitioner sold was acquired in exchange for the mortgage bonds, but as to these particular bonds, no deduction for worthlessness had ever been attempted. It may be that such a deduction, if availed of, would have been allowed. But that, as we have seen, is beside the point. The remaining stock was received for preferred stock of the old company. As to that, a sale for a nominal sum which would have deprived *246 petitioner of any basis was subsequently rescinded in effectuation of a condition subsequent. The claimed loss on the transaction was disallowed and the resulting tax was paid. No contention is made that the rescission should for any reason be disregarded. If petitioner owned the property and was not permitted to deduct the loss which would have resulted from an intervening disposition, it is difficult to see that he should be deprived of the opportunity to treat the property as though held by him throughout and, consequently, as retaining its original basis which he would otherwise be prevented from recovering. Respondent's determination is disapproved. Decision will be entered under Rule 50. Footnotes
1. Senate Finance Committee Report No. 627, 78th Cong., 1st Sess., p. 52.↩