## HELLMAN v. HELVERING.

### No. 5869.

Court of Appeals of the District of Columbia.

Argued Dec. 4, 1933.

Decided Jan. 2, 1934.

Wilton H. Wallace, of Washington, D. C., for petitioner.

G. A. Youngquist, Sewall Key, F. Edward Mitchell, C. M. Charest, W. R. Lansford, Shelby S. Faulkner, and F. W. Dewart, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

In 1922 petitioner invested $150,000 in the shares of the capital stock of a New York corporation. The 1,500 shares of the par value of $100 each then issued to him were all of the issued stock of the corporation, and he continued to be the sole stockholder from the organization of the company to the event out of which this controversy grows. In the years 1922 to 1926, both inclusive, the corporation sustained operating losses,

the total of which, as of December 1, 1926, was $26,271.58. On January 19, 1927, petitioner caused a resolution to be adopted at a stockholders' meeting, providing for the reduction of the authorized capital stock of the corporation from $150,000 to $100,000 and likewise for the reduction of the authorized number of shares from 1,500 to 1,000, and thereafter the corporation took such legal steps as were required by the New York laws to consummate this capital reduction, and, when this was done, the directors adopted a resolution setting forth that the reduction of capital stock had resulted in the creation of a surplus of $23,728.42, and that this amount "be and hereby is declared as a partial liquidation dividend and it is hereby ordered that the said amount shall be paid to and among the stockholders of the company as they appear of record on the books of the company this day, the said payment to be made pro rata according to the number of shares of stock held by the stockholders and distributed to them in partial liquidation of their stock, and treated as full payment in exchange for one third of the shares now held by them."

Acting on the stockholders' resolution providing for a reduction of capital stock, petitioner surrendered to the corporation certificates representing his entire 1,500 shares of capital stock of the corporation and received in lieu thereof 1,000 shares of new stock, and, in accordance with the directors' resolution, the corporation paid over to petitioner the whole of the so-called surplus. Petitioner claimed before the Board, and claims here, the difference between the amount so received by him and the cost price to him of the 500 shares of canceled stock—or, stated in figures, between $23,728.42 and $50,000, or $26,271.58—as a deduction in his 1927 tax return. The Commissioner disallowed the deduction and the Board of Tax Appeals sustained his determination. The case is here on petition for review.

The applicable statutes (Revenue Act 1926, §§ 201, 202, 203, 44 Stat. 10, 11, 12; [26 USCA §§ 932, 933, 934]) are as follows:

"Sec. 201. (c) Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 202 [section 933], but shall be recognized only to the extent provided in section 203 [section 934]. * * *"

"Sec. 201. (h) As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock."

"Sec. 202. (a) Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis * * * and the loss shall be the excess of such basis over the amount realized."

"Sec. 203. (a) Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 202 [section 933 of this title], shall be recognized, except as hereinafter provided in this section."

"Sec. 203. (b) (2) No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization."

"Sec. 203. (f) If an exchange would be within the provisions of paragraph * * * (2) * * * of subdivision (b) if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain or loss, but also of other property or money, then no loss from the exchange shall be recognized."

"Sec. 203. (h) (1) The term 'reorganization' means * * * (C) a recapitalization. * * *"

Petitioner's position, put briefly, is this: That when he accepted a thousand shares of stock in place of his original holding of 1,500 shares, or two-thirds of his original share holdings, and received from the corporation less than the cost to him of the portion of the shares canceled, the difference between the amount paid by him for the shares and the amount received by him in cancellation and liquidation of them is, under the quoted section of the statute, a deductible loss. The Commissioner, on the other hand, insists that the petitioner has not sustained a deductible loss because his relationship to the corporation and its relationship to him remained the same after the event as before, that is to say, that he still owned 100 per cent. of the stock of the corporation.

On this issue, we have here a case in which a corporation is organized and controlled by a single stockholder and which in the first five years of its existence sustains an operating loss amounting approximately to $26,000. At the end of the time mentioned, the loss is canceled by a reduction of the capital from $150,000 to $100,000 and the excess of assets over par of the then outstanding capital is called surplus and paid over to the single stockholder.

We understand that if the transaction we have described had been different in the respect that the corporate capital and stock issue had been reduced one third and the amount called "surplus" had remained undistributed, the stockholder, in canceling a portion of his share holdings, would not have sustained any deductible loss. Neither would he have sustained any if in order to improve the impaired financial condition of the company he had paid additional cash into the corporation. In such circumstances the surrender of a portion of his stock interest on the one hand, or the payment of additional cash on the other, would be classified as a capital contribution to be added to the cost of the stock retained and the ascertainment of gain or loss postponed to final disposition. But petitioner insists that the redemption and cancellation by the corporation of a third of its outstanding stock, accompanied by the distribution of a part of the assets of the corporation, constituted a partial liquidation of the corporation within the provisions of section 202 of the act (26 USCA § 933). He says in this connection that the corporation's resolution provides that the distribution to the stockholder shall be "treated as full payment in exchange for one third of the shares now held by" him and that this resolution fits the statute, section 201 (c) of the act (26 USCA § 932 (c), and makes the loss deductible under section 203 (26 USCA § 934).

But that this is not what actually was done is clear, for the resolution of the stockholders authorized, as we have already shown, the directors to adopt a resolution providing for a distribution of the surplus pro rata among the holders of the shares of stock as reduced one third, and this is what was done, for on February 3, 1927, after authority for reduction of the capital stock and after the surrender and cancellation of the stock, the directors adopted a resolution determining a surplus of twenty-three thousand odd dollars and declaring that amount as a partial liquidation dividend to be paid to the stockholders of the company as they

were of record on the books of the company *that day*. Obviously on that day there were outstanding only 1,000 shares of capital stock, and while it is true the directors' resolution in conclusion declared that the amount so paid be "treated as full payment in exchange for one third of the shares now held by them," it is equally clear that this was not intended, for if it had been it would still further have reduced the capital stock from 1,000 shares to 666⅔ shares.

It will thus be seen that what actually occurred in this case was that petitioner, after the corporation had obtained the authority of the state to change its capital structure, surrendered his entire stockholdings and received back a smaller number of shares, and, on the new basis, the company, having a surplus of assets over liabilities, distributed this surplus to him as the holder of all its capital stock. The corporate resolution calls the "surplus" a liquidating dividend, but we do not think this declaration determines the true nature of the transaction. As the Board of Tax Appeals said, and we think properly, a partial liquidation was neither intended nor carried out, nor was there an intent or an act looking to the winding up of the corporate affairs either in whole or in part. The corporation remained in existence and carried on its corporate affairs in the same manner as before the reduction in capital stock, and petitioner continued a 100 per cent. holder of the stock after the dividend to the same extent as before. In its generally accepted meaning a dividend in liquidation means an act or an operation in winding up the affairs of a firm or corporation, a settling with its debtors and creditors, and an appropriation and distribution to its stockholders ratably of the amount of profit and loss. Here the whole transaction was purely a voluntary bookkeeping arrangement, as the result of which petitioner received back a part of his original investment, but his investment itself remained the same, subject, of course, to tax accountability for the amount so received at its final disposition.

Nor do we think there was any sale of stock by petitioner to the corporation. It is true he disposed of a part of his shares, but, as we have indicated, this was in fact a mere bookkeeping arrangement whereby a deficit was converted into a surplus, but it lacked all the attributes of a sale and we do not understand petitioner to argue otherwise. As we have already pointed out, petitioner continued thereafter to own the corporation just as he had before. Still another reason which occurs to us as a ground for denying

petitioner's claim is the fact that at the time petitioner determined to revise the corporate capital structure the shares of stock owned by him, based on the value of the then corporate assets, had sustained only a loss of approximately $18 per share. Figured on this basis, the 500 shares canceled were worth approximately $82 a share each, which, on the whole 500 shares, would have represented a loss of approximately $9,000, and yet on the theory which petitioner seeks to have us adopt he would be permitted to charge against these 500 canceled shares the total loss of above $26,000, all of which proves that to permit a corporation's affairs to be so manipulated as to enable it to accumulate losses over a period of years and then for the benefit of its stockholder, or, for that matter, stockholders, to reorganize the corporation in such way as not to disturb the respective ownership or control while at the same time allowing the individual or individuals controlling the corporation to claim losses through the surrender to the corporation of a part of their paper certificates would be an invitation to fraud upon the revenues which certainly ought not to be encouraged.

In the present case, petitioner's investment was $150,000, on account of which he has received back about $23,000, leaving him a present net investment of about $127,000, for which he holds complete ownership of the assets of a corporation into which the original investment went. When that corporation's affairs are wound up and liquidated, he will be accountable for income for any amount he shall receive in excess of his present investment of $127,000, and, on the other hand, he will be entitled to deductible losses for any less sum, and the same is true when he shall have sold or disposed of the stock.

Affirmed.