NORTHWEST BANCORPORATION v.
COMMISSIONER OF INTERNAL
REVENUE.

No. 10712.

Circuit Court of Appeals, Eighth Circuit.

Feb. 17, 1937.

Peter S. Rask, of Minneapolis, Minn.
(P. J. Coffey, of Minneapolis, Minn., on the
brief), for petitioner.

Arnold Raum, Sp. Asst. to Atty. Gen.
(Robert H. Jackson, Asst. Atty. Gen., and
Sewall Key and Berryman Green, Sp.
Assts. to Atty. Gen., on the brief), for re-
spondent.

Before GARDNER, THOMAS, and FARIS, Circuit Judges.

THOMAS, Circuit Judge.

This is a petition to review a decision of the Board. of Tax Appeals (32 B.T.A. 1218), and involves income taxes for the year 1930 in the amount of $13,577.85. The petition was filed by the taxpayer, the board having found in favor of the Commissioner of Internal Revenue. Petitioner contends that on November 8, 1930, it sustained a loss of $654,467.75; this amount being the difference between petitioner's cost of stock of the Metropolitan National Bank (hereinafter called Metropolitan) and the maximum value of the remaining assets over liabilities of the Metropolitan on November 8, 1930, the date at which it is claimed liquidation of the Metropolitan was effected. The parties have stipulated "that if the Metropolitan National Bank were liquidated in the year 1930 the Northwest Bancorporation would have sustained a loss of $654,467.75." The Commissioner, however, claims that the Metropolitan was not liquidated during the taxable year of 1930 and that the petitioner realized no deductible loss on that account during that year.

The facts found by the Board in brief are as follows:

(1) The petitioner is a holding company, organized under the laws of Delaware. Its principal place of business is in Minneapolis, Minn. The Metropolitan National Bank was organized as a national bank in 1909. Its place of business was in Minneapolis. It was an independent bank prior to September, 1929, and competed with the Northwest National Bank. The latter had its own separate place of business in Minneapolis.

(2) Five thousand shares of the stock of Metropolitan were outstanding at all times material hereto. The petitioner acquired 4,765 shares of stock of Metropolitan on September 12, 1929.

(3) Metropolitan continued its banking operations until November 8, 1930. It filed separate income tax returns for the years 1929 and 1930.

(4) Metropolitan entered into an agreement with Northwestern dated November 7, 1930, whereby it sold its good will, furniture, and fixtures, and assigned certain leases to Northwestern for $76,187.91. Northwestern assumed and agreed to pay all of the liability of Metropolitan to its depositors and on account of its circulation of $225,000. Metropolitan agreed to repay Northwestern in full with interest for the liability assumed on or before November 8, 1931, by "the application of assets and/or of proceeds from collection or other liquidation of assets, or otherwise." It pledged to Northwestern, as collateral for the repayment, all of its remaining property and assets, including cash. Northwestern was to apply the $76,187.91, the cash, collections, and proceeds of sales of assets of Metropolitan to the reimbursement of Northwestern for the liabilities assumed. Any balance of assets, after Northwestern had been fully reimbursed, was to be surrendered to Metropolitan. Northwestern could buy any assets of Metropolitan at face, or less, provided the respresentatives of Metropolitan agreed to the lower price. If the assets of Metropolitan should prove insufficient to reimburse Northwestern, then Metropolitan was to pay the balance and receive the remaining assets, if any. Interest was to be computed on the daily balance owing to Northwestern until it was paid in full. Metropolitan named two representatives to determine all matters pertaining to the assets, such as renewals, sales prices, extensions, and liquidation. Metropolitan was to liquidate its affairs and wind up its business "with all possible dispatch."

(5) The stockholders of Metropolitan consented to and approved the agreement of November 7, 1930. The terms of the contract were completed and carried out at some time not shown by the record.

(6) Metropolitan discontinued its banking business and vacated its banking rooms on November 8, 1930. It never paid any employees thereafter. Its only business thereafter was incidental to the liquidation of its assets. Northwestern took over all of its assets.

(7) The balance sheet of Metropolitan at the close of business on November 8, 1930, shows total assets of $11,454,166.84, capital stock $500,000, surplus $250,000, undivided profits $252,024.64, total liabilities to stockholders $1,017,611.71, Northwestern National Bank obligation $10,354,397.49, and total liabilities $11,454,166.84.

(8) The directors of Metropolitan on November 7, 1930, met, authorized an agreement with the Minnesota Loan & Trust Company "relating to the future handling of the safe deposit department and of trusts now being administered by this bank," declared a dividend of $2.50 per share "to be paid on December 31st, 1930,

to stockholders of record at the close of business on that date," and disposed of other business matters incidental to the discontinuance of its business. They met again on January 12, 1931, authorized the withdrawal of bonds securing public moneys, and appointed tellers for a stockholders' meeting to be held the same day. The stockholders met on March 20, 1931, voted to place the Metropolitan "in voluntary liquidation under the provisions of sections 5220 and 5221 of the United States Revised Statutes [12 U.S.C.A. §§ 181 and note, 182] to take effect March 20, 1931," and appointed three liquidating agents who were to render semiannual reports to the Comptroller, showing the progress of the liquidation and annual reports to the stockholders.

The statutes pertinent to this case read as follows:

Revenue Act of 1928, c. 852, 45 Stat. 791:

"Sec. 23. Deductions from gross income.

"In computing net income there shall be allowed as deductions: * * *

"(f) Losses by corporations.—In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise."

"Sec. 111. Determination of amount of gain or loss.

"(a) Computation of gain or loss.— Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in section 113, and the loss shall be the excess of such basis over the amount realized."

"Sec. 113. Basis for determining gain or loss.

"(a) Property acquired after February 28, 1913.—The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property."

"Sec. 115. Distributions by corporations. * * *

"(c) Distributions in liquidation.— Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee result-

ing from such exchange shall be determined under section 111." 26 U.S.C.A. §§ 23 and note, 111 note, 113 note, 115 note.

■ The petitioner at the outset contends that the Board of Tax Appeals disregarded the stipulation entered into between the parties and therefore erred in finding that complete liquidation had not taken place in 1930. The argument for the petitioner is built upon the shifting meanings of the words "liquidation," "complete liquidation," and "liquidated," and shares their instability. What the petitioner must show is a loss ascertainable following "complete liquidation," not an estimated loss existing at the time an agreement of liquidation is entered into. When the Commissioner stipulated that, "if the Metropolitan National Bank were liquidated in the year 1930," a loss was suffered, he obviously did not stipulate that the liquidation was completed that year. Such an interpretation is unwarranted.

The sole question presented to this court is whether the petitioner, as a stockholder of the Metropolitan, sustained a deductible loss on its stock investment during the taxable year 1930. This depends upon the question of fact as to whether the Metropolitan was liquidated in 1930.

■ The Board of Tax Appeals did not find, in terms, that the Metropolitan was not liquidated in 1930, but it is evident that the Board considered that its finding of fact amounted to that in substance. In its opinion, however, it stated, "But the Metropolitan was not liquidated in 1930." The Board evidently did not consider the statement to be an additional finding of fact, but an argument with respect to the conclusions to be drawn from its findings. The absence of a finding of the ultimate fact is immaterial if the circumstantial facts as found are such that the ultimate fact follows from them by necessary inference. United States v. Wells, 283 U.S. 102, 120, 51 S.Ct. 446, 75 L.Ed. 867.

■ The applicable rule of law to be followed by this court in such a case as this is set out in Helvering v. Rankin, 295 U.S. 123, 131, 55 S.Ct. 732, 736, 79 L.Ed. 1343, as follows: "The Court of Appeals is without power, on review of proceedings of the Board of Tax Appeals, to make any findings of fact. 'The Board of Tax Appeals is not a court. It is an executive or administrative board, upon the decision of which the parties are given an opportunity to base a petition for review to the

courts after the administrative inquiry of the Board has been had and decided.' [Citation.] The function of the court is to decide whether the correct rule of law was applied to the facts found; and whether there was substantial evidence before the Board to support the findings made."

■ Admittedly the Board's order did not rest upon an erroneous application of law. It recognized the rule that a loss from an investment of stock is sustained where on liquidation of the corporation the stockholder receives less than the cost of his stock. 26 U.S.C.A. § 115 (c) note; Burnet v. Riggs Nat. Bank (C.C.A.4) 57 F.(2d) 980. But it held that the petitioner had failed to bring itself within the rule.

Standard definitions may be of aid in determining when complete liquidation takes place. In Gibson v. American Ry. Express Co., 195 Iowa, 1126, 193 N.W. 274, 278, the Supreme Court of Iowa said: "The term 'liquidation' has a fairly defined legal meaning, and, as applied to a corporation, means the winding up of the affairs of the corporation by reducing its assets, paying its debts, and apportioning the profit or loss."

In Hellman v. Helvering, 63 App.D.C. 18, 68 F.(2d) 763, 765, the Court of Appeals of the District of Columbia said: "In its generally accepted meaning a dividend in liquidation means an act or an operation in winding up the affairs of a firm or corporation, a settling with its debtors and creditors, and an appropriation and distribution to its stockholders ratably of the amount of profit and loss."

■ Complete liquidation would therefore mean that the Metropolitan had wound up its affairs, paid its debts, and apportioned the amount of profit and loss to the shareholders. That this had not taken place in 1930 is evidenced by the fourth paragraph of the Board's findings, which is amply supported by the record. Petitioner, in fact, does not deny any of the findings except in so far as it claims that the contract of November 7, 1930, constituted a sale of all the Metropolitan assets to Northwestern. The contract clearly shows, however, as the Board found, that the assets, other than good will, furniture, and fixtures, were merely pledged to the Northwestern with a privilege on the part of the latter to buy.

The decision of the Board of Tax Appeals is supported by Whitney Realty Co. v. Commissioner of Internal Revenue (C. C.A.6) 80 F.(2d) 429, 431, certiorari denied 298 U.S. 668, 56 S.Ct. 834, 80 L.Ed. 1392. In that case the stockholders of a corporation at a meeting held December 12, 1927, directed the officers to convey the assets to a third party as trustee and amended the charter so as to terminate the Company's existence on December 26, 1927. Later during the month all the property was conveyed to the third party, and he agreed to manage and control the property, receive the rents and profits therefrom, to sell and convey the same, to discharge the obligations of the company, and to distribute the balance of the proceeds among the stockholders according to their respective interests as shown by liquidation certificates issued to them. The court held under those facts that there was not a complete liquidation of the company in the year 1927 by a distribution of its assets in kind so as to permit the stockholders to claim a loss as provided in 26 U.S.C.A. § 115 note. The following excerpts are pertinent to the decision: "It was the evident purpose of the stockholders to wind up the affairs of the company. They chose as an instrument * * * a liquidating agent for the company. The transfer to him by the company of its property for the purposes stated certainly was not a distribution to the stockholders in kind. They did not receive, and so far as appears from the record have not yet received, any of the assets of the company. The liquidating certificates are nothing more than evidence of their right to share in the residue of the proceeds of the sale of the assets after the payment of the corporate obligations and the costs of liquidation. * * * In our opinion he [the third party] was liquidating agent or trustee for the lumber company charged with the duty of winding up its affairs, discharging its obligations and distributing any balance of the proceeds from the sale of the property among the stockholders. There could have been no other purpose in conveying the property to him—indeed, it was necessary to satisfy the obligations of the corporation before there could be a distribution of assets among the stockholders, and until that was done and a distribution made, there could be no complete liquidation and no gain or loss realized by the petitioners."

In this case, as in the Whitney Case, there could be no gain or loss realized until final distribution to the stockholders was made. This obviously was not consummated in 1930. Petitioner at best seeks to balance its prospective share of the net

assets of the Metropolitan on the date of the agreement to liquidate against the cost of the stock and take a deduction of the difference. Section 115 (c) of the Revenue Act of 1928 (26 U.S.C.A. § 115 note) makes no provision for such anticipated loss, but requires delay until the loss is actually ascertained on complete liquidation. The attempt of petitioner to realize a loss on account of its investment in Metropolitan stock was premature.

The petitioner further prays that this court retain jurisdiction of the petition for review, pending the decision of the petitioner's tax liability for the year 1929 presented in consolidated cases under the style of "Northwest Bancorporation v. Commissioner of Internal Revenue," Nos. 10,684 and 10,685. The necessity for this court's retaining jurisdiction of the petition for review is not apparent and is therefore denied.

The order of the Board of Tax Appeals is affirmed.