HAROLD F. HADLEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 110063.   Promulgated January 26, 1943.

*Frank M. Cobourn, Esq.*, for the petitioner.
*W. W. Kerr, Esq.*, for the respondent.

498

OPINION.

DISNEY, *Judge:* We have here to decide whether the transactions through which the petitioner disposed of the corporate stock here involved constitute a sale resulting in capital gain, taxed according to the time of holding under section 117 of the Revenue Act of 1938, or whether on the other hand such transactions constituted a distribution in partial liquidation under section 115 (c) and (i), Revenue Act of 1938, in which case the entire gain would be taxable. No disagreement appears as to the amount of the gain or as to the length of time petitioner had held the stock.

On the record before us there can be no doubt that the transaction to be considered took the form of a sale; and it is equally clear that after the stock was held in the treasury for a short time, it was retired. That the transaction was in the form of a sale is not conclusive. *L. B. Coley*, 45 B. T. A. 405 (414) ; *Cohen Trust* v. *Commissioner*, 121 Fed. (2d) 689. Nevertheless, that fact is to be considered with all of the other circumstances in determining whether there was the distribution in partial liquidation which the Commissioner determined it to be.

After considering all of such circumstances, we have come to the conclusion that it was a sale and not a distribution in partial liquidation, within the meaning of section 115 (c) and (i) of the Revenue Act of 1938.[1] Those subsections, so far as here pertinent, are shown

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

\* \* \* \* \* \*

(c) DISTRIBUTIONS IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117, the gain so recognized shall be considered as a short-term capital gain, except in the case of amounts distributed in complete liquidation. \* \* \*

\* \* \* \* \* \* \*

(i) DEFINITION OF PARTIAL LIQUIDATION.—As used in this section the term "amounts distributed in partial liquidation" means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock.

in the margin. Although, as the respondent stresses, there was actual retirement of the stock very shortly after the purchase, it is beyond question, under the record here, that at the time of the purchase and sale of the 90 shares of stock on November 12, 1938, there had been no determination as to what the corporation would do with the stock when purchased. This is emphasized by the fact that a question arose in that respect after the transfer, and only between the officers of the corporation, the petitioner not participating; also, by the fact that at that time the only thing decided was that the stock should be held for the present in the treasury and that no decision was reached as to permanent holding, sale, or retirement of the stock. It was not until November 15 that it was decided to retire the stock, and this decision on the part of some of the officers was not effectuated until November 30, at which time the stockholders authorized retirement and reduction of capital. Although the fact that there was such retirement after the purchase of the 90 shares of stock certainly is not to be disregarded, we think it clear that the fact that such course was not even suggested or decided upon until November 15 makes it impossible to regard the sale of the stock by the petitioner as part of any plan or course of action resulting in retirement of stock; for, even after the petitioner had disposed of his stock to the corporation, the direction of events might have turned either towards retirement or towards mere holding as treasury stock.

The statutory expression is, "amounts distributed in partial liquidation," and it here means "a distribution by a corporation in complete cancellation or redemption of a part of its stock." Though not holding that the word "distribution" is altogether inapplicable to a transfer of stock by but one stockholder, nevertheless in such a case as here, we think it not amiss to recall that the word "distribution" is defined by Webster's International Dictionary as "division or apportionment among several or many," and that there is no lack of difficulty in applying logically the word to a mere sale by one minor stockholder. It is not easy, moreover, to see where the cash payment for stock delivered prior to any suggestion of, or decision upon, cancellation or retirement is a part of any cancellation or redemption, that is "in" a "cancellation or redemption" which *later* arose.

The parties agree that whether there was liquidation is a question of fact, and here it is plain there was no history of failing business, no intent to go out of business, in whole or in part, and in fact the corporate business very substantially increased in later years. The ordinary concept of liquidation as involved in a dissolution of business, in whole or in part, is here altogether absent. The stock involved is common stock, and cases involving various methods of retiring preferred stock, more or less in pursuance of plans made at

the time of its issuance, are not fully here applicable. Considering the acquisition of the stock prior to decision either to hold in the treasury or to retire it, we think that the conclusion herein is largely controlled by that in *Alpers* v. *Commissioner*, 126 Fed. (2d) 58. There the court says:

> * * * The character of the transaction must be judged by what occurred when the petitioner surrendered his certificate in exchange for payment. It is stipulated that his shares were transferred to the corporation but we can see nothing to indicate that when it acquired them it had then the intention to retire them. * * *

The intent to retire at the time of acquisition of the 90 shares is equally absent in the present case. That the facts there involved were largely similar to those here considered is shown by the following further quotation:

> * * * The idea of retirement was first suggested by an accountant's advice to the company's bookkeeper at some unspecified date after its acquisition of the shares. We do not think that a subsequently formed intention to retire stock purchased by a corporation can convert its payment of the purchase price into "a distribution by the corporation in complete cancellation or redemption of a part of its stock" so as to effect the tax liability of the shareholder who sold, even on the assumption that formal compliance with the state law as to retirement is unnecessary.

It is true that in the *Alpers* case there was no certificate of redemption of shares filed with the secretary of state and no corporate action taken to ratify the transaction, but the court considered the fact, here involved, that transfer taxes were paid, and, as above seen, the fact that the retirement was under a decision arrived at after the purchase. A decision to show retirement upon the corporate books and to file a certificate with the secretary of state, arrived at after and unconnected with the acquisition of the stock seems to us to leave such acquisition no part of liquidation proceedings. It has not been suggested that the situation was any different with respect to the other stock paid for up to July 1, 1939, and though the retirement of the earlier purchase may be some indication that the later purchase was also to be retired, no corporate action towards retirement of the stock was taken until after final delivery and payment for all stock, that is after July 1, 1939, and prior to that time the 60 shares of stock were carried in the treasury, some of them for several months. We conclude that there is no essential difference in the treatment of the 90 shares and the 60 shares, and that the purchase price received by the petitioner was not received by way of "distribution by a corporation in complete cancellation or redemption of a part of its stock."

*Decision will be entered under Rule 50.*