**STERN v. HARRISON, Collector of Internal Revenue.**

**No. 4417.**

District Court, N. D. Illinois, E. D.

Feb. 11, 1944.

D'Ancona, Pflaum, Wyatt, Marwick & Riskin, of Chicago, Ill., for plaintiff.

Samuel O. Clark, Jr., Asst.Atty.Gen., and Andrew D. Sharp and Fred J. Neuland, Sp. Assts. to Atty. Gen., for defendant.

SULLIVAN, District Judge.

On June 30, 1942, plaintiff brought this suit to recover from defendant an alleged overpayment of income taxes and interest thereon for the calendar year 1936, in the amount of $8,827.48, with interest thereon from the date of payment. A claim for refund filed by plaintiff for the recovery of this amount was disallowed by the Commissioner of Internal Revenue on July 18, 1940.

The facts have been stipulated and are as follows: Plaintiff is a resident of Chicago, Illinois, and filed with defendant his income tax return for the calendar year 1936. During the year 1936 plaintiff was the owner of approximately 1,122 shares of the preferred stock of Balaban & Katz Corporation, a Delaware Corporation, organized in 1923. Pursuant to a resolution adopted at a meeting of its Board of Directors held on February 5, 1936, Balaban & Katz gave notice, under date of March 1, 1936, that one-half of the holdings of each preferred stockholder of record on April 3, 1936, would be redeemed by the payment in cash of $110 per share, together with all unpaid dividends accrued thereon to May 1, 1936, in accordance with its Certificate of Incorporation.

Since its incorporation in 1923 Balaban & Katz has been engaged in the business of exhibiting motion pictures in the middle west, and as of December 29, 1934, its outstanding capital stock consisted of 264,-206 shares of common stock, having a total value of $6,605,150.00; and 26,126 shares of 7% cumulative preferred stock having a par value of $100 a share, or a total par value of $2,612,600, subject to redemption at $110 a share, plus accumulated dividends. Said shares of stock so acquired by Balaban & Katz, pursuant to the plan of redemption, were retired and cancelled as of May 1st, 1936. On April 28, 1937, Balaban & Katz filed with the Secretary of State of Delaware a "Certificate of Retirement of Preferred Stock" dated February 16, 1937, and recorded in the Recorder's Incorporation Record on June 17, 1937, wherein Balaban & Katz certified that pursuant to the provisions of Section 27 of the General Corporation Law of the State of Delaware, Rev.Code 1935, § 2059, as well as by resolution of its Board of Directors, 13,055 shares of its issued and outstanding preferred stock, theretofore purchased by it out of its surplus, had been retired, and that the capital of the corporation was thereby reduced by the amount of capital represented by the shares so purchased and retired, namely $1,305,-500. It was also certified therein that the Certificate of Incorporation prohibited the reissue of the shares of preferred stock so purchased.

The profit realized by plaintiff on the purchase and retirement of his 561 shares of the preferred stock of Balaban & Katz in the sum of $22,650.16, was treated by him in his 1936 income tax return as a capital gain realized upon the sale or exchange of capital assets, pursuant to Section 117(a) of the Revenue Act of

1936, 26 U.S.C.A.Int.Rev.Acts, page 873. Thereafter the Commissioner of Internal Revenue made an audit of plaintiff's income tax return for 1936 and determined that the profit of $22,650.16 was 100% taxable as a distribution by Balaban & Katz in partial liquidàtion of its preferred stock under the provisions of Sections 115(c) and (i) of the Revenue Act of 1936, 26 U.S.C.A.Int.Rev.Acts, pages 868, 871, which resulted in a deficiency in plaintiff's tax of $8,485.08, which amount, together with interest thereon, plaintiff paid to defendant on January 19, 1938. Thereafter, on June 27, 1938, plaintiff filed with defendant a claim for refund of income taxes and interest thereon, overpaid in 1936, in the amount of $8,827.48, on the ground that $8,485.08 thereof, plus $342.40 interest thereon, was overpaid by him due to the Commissioner's determination as aforesaid. On July 18, 1940, the Commissioner formally notified plaintiff of the disallowance of his claim for refund, and the present suit was brought on June 30, 1942.

The question before the court for determination is whether the gain derived by plaintiff on the transfer of his 561 shares of preferred stock in the Balaban & Katz Corporation was taxable 100% as a distribution in partial liquidation, within the meaning of Section 115(c) and Section 115(i) of the Revenue Act of 1936, or was taxable as a capital gain upon the sale or exchange of a capital asset under Section 117(a) of the Revenue Act of 1936.

Section 115, Title 26 U.S.C.A. Int. Rev. Acts, p. 868, Revenue Act of 1936, c. 690, 49 Stat. 1643, provides:

"Distributions by Corporations

*    *    *    *    *

"(c) Distributions in liquidation. Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117(a) 100 per centum of the gain so recognized shall be taken into account in computing the net income, except in the case of amounts distributed in complete liquidation of a corporation. For the purpose of the preceding sentence, 'complete liquidation'

includes any one of a series of distributions made by a corporation in complete cancellation or redemption of all of its stock in accordance with a bona fide plan of liquidation and under which the transfer of the property under the liquidation is to be completed within a time specified in the plan, not exceeding two years from the close of the taxable year during which is made the first of the series of distributions under the plan. In the case of amounts distributed (whether before January 1, 1934, or on or after such date) in partial liquidation (other than a distribution within the provisions of subsection (h) of this section of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits.

*    *    *·    *    *

"(i) Definition of partial liquidation. As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock."

Section 117 provides:

"Capital Gains and Losses.

"(a) General rule. In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

"100 per centum if the capital asset has been held for not more than 1 year;

"80 per centum if the capital asset has been held for more than 1 year but not more than 2 years;

"60 per centum if the capital asset has been held for more than 2 years but not more than 5 years;

"40 per centum if the capital asset has been held for more than 5 years but not more than 10 years;

"30 per centum if the capital asset has been held for more than 10 years."

Defendant Collector claims that plaintiff's disposition of his Balaban & Katz preferred stock was in pursuance of a partial liquidation of the Balaban & Katz Corporation, as that term is defined in Section 115(i) of the Revenue Act of 1936, and therefore under Section 115(c) 100%

of the gain on the transaction should be taken into consideration in computing the net income.

Plaintiff on the other hand contends that in view of the circumstances the redemption of the Balaban & Katz stock in 1936 was not a partial liquidation, within the meaning of Section 115(i), but was rather a sale or exchange of a capital asset, and therefore the percentage limitations of Section 117(a) are applicable in the computation of plaintiff's 1936 net income. In explanation of this position, and in support of his contention that the transaction was in reality a sale or exchange of capital assets, plaintiff sets out that prior to 1935 Balaban & Katz outstanding capitalization consisted of about $6,000,000 stated value of common stock, and about $6,000,000 par value and principal amount of prior securities, consisting of preferred stock, bearing cumulative dividends at 7%, and serial notes bearing interest at 5½% and 6%. That the motion picture exhibitors were among the first to recover from the business depression of the early 1930s. That by 1934 and 1935 Balaban & Katz business had improved to the point where it was earning substantial profits and was well able to obtain large bank loans at interest rates far below the then existing interest and dividend rates payable on its notes and preferred stock. During 1935 Balaban & Katz retired all of its outstanding serial gold notes, totalling over $3,000,-000 in principal amount, and carrying interest at a rate of 5½% and 6%, substituting therefor a bank loan carrying interest at 3¼%. That the difference between the rates of interest on the prior securities and the substituted bank loan amounted to more than 2¼%, and indicated an annual saving of more than $67,500 in Balaban & Katz current charges before the payment of common dividends. That pursuant to the plan for reducing prior charges by substituting for high yield securities the bank loans bearing low rates of interest, Balaban & Katz during 1936 issued a notice of redemption of half of its outstanding preferred stock. Pursuant to this notice, approximately $1,300,000 of preferred stock, bearing annual cumulative dividends at the rate of 7%, were redeemed with money borrowed through bank loans. At this time the interest rate on the entire bank loan, including the amount borrowed for retirement of the gold notes as well as the amount borrowed for redemption of

the preferred stock, was reduced in an amount ranging from 3¼% to 3⅛%, and as a result of this transaction Balaban & Katz's annual charges, before the payment of common dividends, were further reduced by approximately $55,000. Thus by the substitution of bank loans for notes in 1935, and for preferred stock in 1936, Balaban & Katz effected savings which increased its annual net profits available for the payment of dividends to common stockholders by approximately the sum of $122,500, without reducing or otherwise affecting its assets, aggregate debt, stock capitalization, or operations. That pursuant to the notice of redemption of Balaban & Katz preferred stock on May 1, 1936, this tax-payer conveyed to Balaban & Katz one-half of the number of preferred shares of stock which he held. His profit on this transaction amounted to $22,650.16, which he reported in his 1936 income tax return, subject to the capital gains limitations of Section 117(a) of the Revenue Act of 1936, the resulting net gain taken into account being $8,964.55.

To this defendant answers that in order to come squarely within the definition of "partial liquidation" contained in Section 115(c), it is only necessary that there be a distribution by a corporation "in complete cancellation of a part of its stock," such as that made by Balaban & Katz, and that the purpose and intent which motivated the cancellation or redemption is not a factor or criterion in determining what constitutes a statutory "partial liquidation."

In the instant case Balaban & Katz quite apparently adopted and put into effect an elaborate plan of refinancing or recapitalization, accomplished by eliminating notes and preferred stock which bore high rates of interest, and substituting therefor a bank loan or loans carrying a much lower rate of interest, thereby increasing the net income for the payment of dividends on the common stock. The corporate structure was in nowise changed, the total assets or total capitalization were not decreased, no steps taken toward liquidating the business in any way, the only result of the transaction being to increase the net income available for the payment of dividends on the common stock. While this acquisition by Balaban & Katz of a portion of its preferred stock might literally come within the term "partial liquidation" as the same is defined in Section 115(i), I do not believe that the mere acquisition of the stock may

be disassociated from all of the other attendant circumstances and transactions which form a part of the recapitalization plan here in question. In the case of Hadley v. Commissioner of Internal Revenue, 1 T.C. 496, 501, the taxpayer transferred to a corporation certain shares of his stock which were retired shortly thereafter. The Commissioner contended that the transaction was a partial liquidation, on the ground that it was in retirement of a portion of the corporate stock, and therefore within the language of Section 115(i). The Tax Court held that Section 115(i) must be applied in the light of the attendant circumstances, and that the facts did not justify the conclusion that a partial liquidation had occurred, saying:

"The parties agree that whether there was a liquidation is a question of fact, and here it is plain there was no history of failing business, no intent to go out of business, in whole or in part, and in fact the corporate business very substantially increased in later years. The ordinary concept of liquidation as involved in a dissolution of business, in whole or in part, is here altogether absent."

The Stipulation of Facts in the instant case shows that Balaban & Katz was one of the leading motion picture exhibitors in the Chicago area, and that position seems not to have been changed as a result of the recapitalization plan which was put into effect during 1935 and 1936, nor were its assets, stock capitalization or operations reduced in any way by the adoption of the plan. I do not believe that the redemption by Balaban & Katz of its preferred stock involved anything like a partial liquidation, nor was it in accordance with any bona fide plan of liquidation, within the ordinary meaning of that term. Of course any transaction which is in substance a "partial liquidation" within the meaning of Section 115(i) cannot be taken out of its statutory position because of any motive or intent on the part of the taxpayer or any other person. But that is not the question here involved. The question here is, does the transaction viewed in its entirety come within the meaning of the term "amounts distributed in partial liquidation" of a corporation as defined in Section 115(i)? The case of Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355, involved the meaning of the term "reorganization" as the same was defined in the Revenue Law. The Government's contention was that the transaction in question was not a reorganization, even though its form followed the language of the statute, because the ultimate goal sought to be accomplished was not in reality the reconstruction of a business organization. The tax-payer contended that the opposing argument was based upon the intent of the parties, and the Supreme Court agreed that the intent of the parties was not controlling, but held that where the goal was not the one contemplated by the Statute, the mere fact that the forms referred to in the statute, were exactly followed, did not make the statute applicable. To be sure the transaction here in question in form follows the language of the statute, but the ultimate goal sought to be accomplished by Balaban & Katz, without giving any consideration to the intent of the parties, was not in reality a partial liquidation of that corporation, but rather amounted to an expansion of the same. In Pinella Ice & Cold Storage v. Commissioner, 287 U.S. 462, 53 S.Ct. 257, 77 L. Ed. 428, the question involved was whether or not a certain business transaction was covered by the term "reorganization" as the same was specifically defined in the Revenue Act. The Supreme Court held that while the definition contained in the statute was literally applicable, nevertheless the transaction was not the type of transaction contemplated by Congress in enacting the definition, and hence was not a reorganization for tax purposes. In Smith v. Commissioner of Internal Revenue, 1938, 38 B.T.A. 317, a corporation, pursuant to the adoption of resolutions by its board of directors, acquired forty-five of its own shares at the rate of $1000 per share. The Board held that the transaction was not a partial liquidation, because it was not the type of transaction intended to be covered by the partial liquidation provision, the Board saying:

"The sole question for consideration is whether the transaction, upon which the disputed tax arises, was a sale of stock to the corporation, or a distribution in partial liquidation by the corporation to the petitioner. * * *

"In Guild [v. Commissioner of Internal Revenue], 19 B.T.A. 1186, at page 1204, the Board states:

"* * * Liquidation is not a technical status which can be assumed or discarded at will by a corporation by the adoption of a resolution by its stockholders, but an

existing condition brought about by affirmative action, the normal and necessary result of which is the winding up of the corporate business. * * *

"Partial liquidation is merely liquidation less than complete. Whether the transaction in question constituted a distribution in partial liquidation is entirely factual. Gossett v. Commissioner, [4 Cir.], 59 F.2d 365; Kennemer [v. Commissioner of Internal Revenue], 35 B. T. A. 415, affirmed [5 Cir.], 96 F.2d 177."

In Harry S. Berger, B.T.A. Memo, Docket 91,000, CCH Dec. 10,561–E The Board said:

"In the recent case of William A. Smith [v. Commissioner of Internal Revenue], 38 B.T.A. 317, the Board had under consideration a similar question upon a parallel state of facts and discussed at some length the distinction between a distribution in partial liquidation of a corporation and the mere purchase by a corporation of a portion of its own outstanding shares of stock. We need not here repeat what was said there. As was true in the cited case, the facts in the instant case established that at the time of the transfer of the stock here involved there was no intention on the part of the corporation or its stockholders to wholly or partially liquidate the Nobil Shoe Company, but instead that the petitioner Harry S. Berger and the company intended to, and in fact did, effectuate a sale and purchase respectively of Berger's 280 shares of stock of that company.

"We conclude that the admitted gain of $46,195.60 realized by petitioner in 1935, was not a distribution in partial liquidation of a corporation as determined by respondent; that such gain was realized from the sale of a capital asset, and that only 30% thereof may be included in computing petitioner's income for the taxable year."

In Wilcox v. Commissioner of Internal Revenue, 1941, 43 B.T.A. 931, 939, 940, the Board of Tax Appeals said:

"The crux of our question is, as the petitioners submit, whether the distribution made in 1934 was made in partial liquidation of the corporation, so that the amounts distributed should be treated 'as in part or full payment in exchange for the stock' under the provisions of subsection (c) above. * * *

"What is meant by the word 'liquidation' as used in subsections (c) and (i) above?

"In Guild [v. Commissioner of Internal Revenue], 19 B.T.A. 1186, 1202, we said:

"The word 'liquidation' when applied to a partnership or company has a general meaning, well recognized by text writers and courts, as the operation of winding up of its affairs by realizing its assets, paying its debts and appropriating the amount of profit or loss. 37 Corpus Juris, 1265; Assets Realization Co. v. Howard, [70 Misc. 651], 127 N.Y.S. 798; Gibson v. American Ry. Express Co., 195 Iowa 1126, 193 N.W. 274; Rohr v. Stanton Trust & Savings Bank, 76 Mont. 248, 245 P. 947; Gilna v. Barker, 78 Mont. 357, 254 P. 174; Lafayette Trust Co. v. Beggs, 213 N.Y. 280, 107 N.E. 644; In re Union Bank of Brooklyn, [96 Misc. 299], 161 N.Y.S. 29.

"In Hellman v. Helvering, [63 App.D.C. 18], 68 F.2d 763, it was said that:

"* * * In its generally accepted meaning a dividend in liquidation means an act or an operation in winding up the affairs of a firm or corporation, a settling with its debtors and creditors, and an appropriation and distribution to its stockholders ratably of the amount of profit and loss. * * *

"See also Rheinstrom v. Conner, [D.C.], 33 F.Supp. 917; Northwest Bancorporation v. Commissioner, [8 Cir.], 88 F.2d 293. In Tate v. Commissioner, [8 Cir.], 97 F.2d 658, it was said that: 'Whether a dividend is a "distribution in liquidation" is a question of fact, and depends upon the intent of the directors of the corporation.'

"In the instant case there was no plan afoot and there was no intention on the part of the directors and stockholders of Inter-Island to wind up the affairs of that corporation. All that was undertaken was to distribute a portion of the accumulated earnings and profits of the company which were not needed in the normal course of its business. This was in no sense a liquidation as that term has been generally construed. The case of Bynum v. Commissioner, 5 Cir., 113 F.2d 1, is distinguishable on the facts. There the distribution was made to the stockholders out of the proceeds from the sale of a substantial portion of its capital assets and pursuant to a resolution to liquidate. The court held, reversing 40 B.T.A. 336, that the evidence showed a bona fide undertaking to liquidate the corporation and that the indorsement of the dividend on the stock certificates 'canceled and redeemed them to that extent.' Here

the distribution was not made out of the proceeds from the sale of any capital asset, and there was no * * * intention to liquidate the corporation."

Sections 115(c) and 115(i) were first enacted in the Revenue Act of 1924 as Sections 201(c) and 201(g), 26 U.S.C.A. Int. Rev.Acts, page 3. The House Ways and Means Committee Report on the 1924 Act (1939-1, Part 2, C.B. pp. 249, 250), is as follows:

"Section 201(c) (1) The existing law has no provision similar to subdivision (c) of the Bill, but the Treasury has construed the existing law as taxing liquidating dividends, not as capital gains, but as dividends subject to the surtax rates. (The proposed bill, as did the 1918 Act, treats a liquidating dividend as a sale of the stock to the corporation and recognizes the true effect of such a distribution.)

"The theory of liquidating dividends is extended to distributions in partial liquidation. If a corporation retires a portion of its capital stock, the transaction is treated, from the point of view of the stockholder, as a sale of his stock. If the corporation distributes an amount in partial retirement of its capital stock, the amount thereof is to be considered as a return of capital, and taxable only if, and to the extent that, it exceeds the basis of the stock."

The Senate Finance Committee Report on this question was the same as the above, except that it substituted the following in place of the above bracketed sentence (1939-1 Part 2,) C.B. p. 274:

"* * * The bill treats a liquidating dividend as a sale of the stock, with the result that the gain to the taxpayer is treated not as a dividend subject only to the surtax, but as a gain from the sale of property which may be treated as a capital gain. The treatment of liquidating dividends under the bill is substantially the same as provided for in the Revenue Act of 1918. A liquidating dividend is, in effect, a sale by the stockholder of his stock to the corporation; he surrenders his interest in the corporation and receives money in place thereof. Treating such a transaction as a sale and within the capital gain provisions is consistent with the entire theory of the Act, and, furthermore, is the only method of treating such distributions which can be easily administered."

The purpose of Section 201(c) seems to have been to place liquidating dividends on a capital gain basis instead of a dividend basis, as they had theretofore been treated by the Treasury Department. The report also sets out that "the theory of liquidating dividends is extended to distributions in partial liquidation," meaning, it seems to me, that a "partial liquidation" is also placed on a capital gain basis, and therefore is considered a sale. Plaintiff's theory here is that the transaction in question amounted to a sale of his stock, and therefore his gain therefrom should be taxed under Section 117(a) covering capital gains and losses.

Article 1545 of Regulation 65, promulgated under the Revenue Act of 1934, dealing with distributions in liquidation, is as follows:

"Distributions in liquidation. Amounts distributed in complete liquidation of a corporation are to be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation are to be treated as in part or full payment in exchange for the stock so cancelled or redeemed. The phrase 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock. A complete cancellation or redemption of a part of the corporate stock may be accomplished, for example, (1) by the complete retirement of all shares of a particular preference or series, (2) by taking up all of the old shares of a particular preference or series and issuing new shares to replace a portion thereof, or (3) by stamping on the old shares a notation of the reduction in their par value."

Similar, if not identical, enactments of Sections 201(c) and 201(g) of the Revenue Act of 1924 were enacted in the Revenue Acts of 1926, 1928, 1932, and 1934, with similar provisions made in the regulations promulgated under each of the Acts. These Acts and Regulations were the forerunners of Sections 115(c) and 115(i) in the Revenue Act of 1936, which is the Act here involved. Article 115—5 of Regulation 94, promulgated thereunder, so far as partial liquidations are concerned, reads as follows:

"In the case of amounts distributed in partial liquidation of a corporation, the amount of the loss so recognized is subject to the limitations contained in section 117,

but the entire amount of the gain so recognized shall be taken into account in computing net income, despite the provisions of section 117. The term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock. A complete cancellation or redemption of a part of the corporate stock may be accomplished, for example, by the complete retirement of all of the shares of a particular preference or series, or by taking up all the old shares of a particular preference or series and issuing new shares to replace a portion thereof, or by the complete retirement of any of the stock, whether or not pro rata among the shareholders."

I believe that the legislative history of Sections 115(c) and 115(i) as well as the general principles of statutory construction support plaintiff's theory. I am therefore of the opinion that the redemption of its preferred stock by Balaban & Katz in 1936 did not amount to "a distribution in partial liquidation" such as to come within the meaning of that term as it is defined in the Revenue Act of 1936, but rather that the transaction amounted to a sale of capital assets, taxable under Section 117(a).

Plaintiff will have judgment for $8,827.-48, together with interest and costs.