Frank N. MATTISON et ux., Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 3315.

United States District Court
D. Idaho, S. D.

July 2, 1958.

Woolven Patten, Seattle, Wash., and Langroise & Sullivan, Boise, Idaho, for plaintiff.

Charles K. Rice, Asst. Atty. Gen., by James P. Garland and Thomas H. Foye, Dept. of Justice, Washington, D. C., and Ben Peterson, U. S. Atty., for the District of Idaho, Boise, Idaho, for defendant.

FRED M. TAYLOR, District Judge.

■ This is an action for refund of income taxes in the amount of $53,461.89, plus interest, allegedly overpaid by the taxpayer for 1952.

Plaintiffs, as husband and wife, filed joint income tax returns for the years in question and any reference to "taxpayer" or "Mattison" is intended to refer only to plaintiff, Frank N. Mattison.

The controversy is in regard to the method of taxing the gain which Mattison received as a result of the liquidation of the Wescott Oil Company.

The Wescott Oil Company was incorporated under the laws of the State of Idaho in 1920, and for over thirty (30) years was engaged in the business of selling gasoline and related petroleum products in the States of Idaho and Oregon. Up until 1926, the corporation was wholly owned by the Continental Oil Company. In 1926, C. J. Wescott, also known as Ike Wescott, acquired twenty (20) per cent of the stock of said corporation. Wescott then became President of the corporation, which position he held until its final dissolution in 1953. In 1945, the Continental Oil Company sold its stock to Wescott who resold a considerable amount of said stock to friends and business associates at the same price he had paid Continental. It was at this time that the taxpayer acquired twenty-five (25) shares of said stock. He was then Secretary-Treasurer of the corporation and held such position between the years of 1929 and 1952.

In 1951, Wescott, in behalf of himself and the other stockholders, negotiated with Continental Oil Company to sell the stock of the Wescott Oil Company to Continental. Wescott's negotiations for a sale of the stock to Continental were unsuccessful. During some of the negotiations with Continental, Mattison had been present for the purpose of assisting Mr. Wescott. After Mattison learned that the negotiations had failed he approached Wescott in regard to purchasing the stock of the Wescott Oil Company at the price Wescott had been asking for it from Continental. Wescott and Mattison orally agreed that the shares could be acquired at such prices. Immediately thereafter, Mattison began negotiations for the sale of the physical assets of the Wescott Oil Company to Continental, if and when he acquired the same. After some negotiations, and on May 12, 1952, Continental executed a binding offer in favor of Mattison good for thirty (30) days, to purchase the physical assets of the Wescott Oil Company for $1 million, plus inventory.

After obtaining the agreement from Continental, Mattison approached the other stockholders of Wescott Oil and obtained options to purchase their shares in said corporation. These options were exercised on or about May 30, 1952, and pursuant to the terms of the option agreement, the shareholders of Wescott Oil Company deposited their shares with the First Security Bank of Idaho as escrow holder. Wescott Oil Company is-

sued a new certificate of stock in the name of Frank N. Mattison for a total of 2,189 shares. This certificate was for all of the stock purchased by Mattison from the other stockholders and the twenty-five (25) shares purchased by him in 1945. The new certificate was deposited with the escrow holder as required by the terms of the escrow instructions.

Mattison, being the sole stockholder of Wescott Oil Company, called a special stockholders' meeting for June 13, 1952, at which meeting it was resolved that the business of the corporation be discontinued; that the Officers and Directors proceed to wind up its business affairs; transfer its assets to the stockholder; and dissolve the corporation.

Immediately following the shareholders' meeting a special meeting of the Board of Directors was held, at which time Mattison resigned as Secretary-Treasurer of the corporation. At this meeting the Directors resolved that the operating assets be conveyed to Mattison by way of partial distribution. Soon thereafter, and on June 16, 1952, the Wescott Oil Company conveyed its operating assets to the taxpayer, who then reconveyed the same to a subsidiary corporation wholly owned by Continental Oil Company. At said time, Continental Oil Company paid Mattison by check, $1,400,000, which check was endorsed by Mattison and deposited with the bank, to be paid out according to the escrow instructions. The balance of the purchase price for the operating assets of $289,399.07, was paid by the subsidiary corporation of Continental on June 27, 1952. Likewise, these funds were applied on obligations of Mattison according to instructions.

The certificate representing all of the stock of Wescott Oil Company issued to Mattison was released to him on June 16, 1952, with an endorsement thereon as follows: "June 16, 1952, Partial liquidation made this date hereon by distribution to the above-named stockholder, Frank Mattison, of all the real and personal property, investments, fixtures, equipment, contracts, and other valuable rights and liabilities, and all merchandise, accounts and notes receivable of the company, excepting only cash and stock of Lilly Seed Co. This stock being hereafter non-transferable, all pursuant to stockholder's and directors' resolution of June 13, 1952."

Subsequent to the conveyance of the operating assets to Mattison and by Mattison to the subsidiary corporation of Continental, the Wescott Oil Company continued to wind up its business affairs until May 12, 1953, at which time the balance of the assets in the corporation were distributed to taxpayer and he, in turn, surrendered the certificate representing all the shares in the corporation, which was then cancelled. Wescott Oil Company was finally dissolved by a Court Decree on June 19, 1953.

During all of the period that the Wescott Oil Company was being liquidated and its business affairs wound up, Mattison was neither a statutory officer nor a Director of the corporation. Mattison did not direct or control the liquidation and dissolving of the corporation.

Subsequent to the time the corporation was dissolved, and on November 3, 1953, Mattison received shares of stock in the Lilly Seed Company which he sold in 1955 for $1,000 and an insurance refund in the amount of $275.90. The $101,585.76 distributed to taxpayer on May 12, 1953, the insurance refund, and the fair market value of the Lilly stock was reported by the taxpayer as long term capital gain in 1953.

The 2,164 shares of stock of the Wescott Oil Company purchased by Mattison in May 1952, cost him $1,347,480.57. The twenty-five (25) shares of stock acquired by him in 1945 cost $4,841.25. His total cost of all of the stock was $1,352,321.82. The physical assets of the corporation distributed to·him by way of partial distribution in June 1952, were sold for $1,689,399.07, and he assumed an obligation of the corporation in the amount of $310,123.89, representing a gain of $23,276.29, after expenses of $3,677.07, over the cost basis of his shares. This gain was reported by Matti-

son and his wife on a joint return filed for the year 1952.

As a result of the final liquidation of the corporation, Mattison received a total of $102,861.66 in May and November of 1953. This amount, received in 1953, Mattison and his wife reported, less expenses of $38.17, in a return filed for 1953. This gain was reported as a long term capital gain.

The Internal Revenue Service determined that the Mattisons owed additional income taxes for 1952, amounting to $69,257.45, and were entitled to a refund of $25,859.64 for the year 1953. As a result, the Director of Internal Revenue assessed a net deficiency of $43,397.81, plus interest in the amount of $10,064.08, which total of $53,461.89 as assessed was paid by the Mattisons. This suit is for the recovery of said amount, plus interest. There is no dispute between the parties as to the total amount of gain in the sum of $126,099.78 which Mattison received as a result of the liquidation of the Wescott Oil Company.

The plaintiffs contend that the gain should be paid as reported by them and that the $102,823.49 of the gain should be taxed as reported in 1953. It is first contended by the defendant, that all of this gain, except $2,273.04, should be taxed in 1952. As an alternate contention, the defendant claims that the gain should be allocated between the years, as reported, but taxed in 1953 as short term gains.

After fully considering the evidence and the excellent briefs filed herein, this Court favors the position of the plaintiffs.

The manner by which liquidating dividends are taxed to the individual shareholders receiving the same was provided for in Section 115(c) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 115 (c):

"Distributions in liquidation. Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. * * *"

Where several distributions are made in the process of completely liquidating a corporation the distributions received are first applied to reduce the cost basis of the stock and capital gain is only realized when the amount of the liquidating dividends exceed the cost basis. Letts v. Commissioner, 30 B.T.A. 800, affirmed, 9 Cir., 84 F.2d 760; T. T. Word Supply Co. v. Commissioner, 41 B.T.A. 965; Ludorff v. Commissioner, 40 B.T.A. 32; Quinn v. Commissioner, 35 B.T.A. 412. It has been concluded that this result may follow where the corporation is wholly owned by a single stockholder. Word Supply Co. v. Commissioner, supra; Lockhart v. Commissioner, 8 T.C. 436; Mertens, Law of Federal Income Taxation, Vol. 1, § 9.74, n. 20; cf. Hellman v. Helvering, 63 App. D.C. 18, 68 F.2d 763. It appears to be the general rule that such gain is only realized and recognized when it is actually received by the shareholder. Northwest Bancorporation v. Commissioner, 8 Cir., 88 F.2d 293; Dresser v. United States, 55 F.2d 499, 74 Ct.Cl. 55; cf. Case v. Commissioner, 9 Cir., 103 F.2d 283.

It is urged by the defendant that the foregoing statute and cases are not applicable in the instant case; that the nature of the transaction with which we are concerned is a unified plan to purchase assets for resale; that the corporate entity, therefore, must be disregarded and the transaction taxed as a purchase and sale of assets and not as on the liquidation of a corporation under Section 115 (c) I.R.C.1939. In support of this contention the defendant cites Commissioner of Internal Revenue v. Ashland Oil and Refining Co., 6 Cir., 99 F.2d 588, certiorari denied, Helvering v. Ashland Oil & Refining Co., 306 U.S. 661, 59 S.Ct. 786, 83 L.Ed. 1057; Cullen v. Commissioner, 14 T.C. 368; Kimbell-Diamond Milling Co. v. Commissioner, 14 T.C. 74; affirmed 5 Cir., 187 F.2d 718, certiorari denied, 342 U.S. 827, 72 S.Ct. 50, 96 L.Ed. 626; Montana-Dakota Utilities Co. v.

Commissioner, 25 T.C. 408; Snively v. Commissioner, 19 T.C. 850, 219 F.2d 266.

On reviewing the cases cited by defendant this Court is of the opinion that they are not controlling here. To be of assistance in the case here, the holdings in said cases would have to be extended beyond their scope.

On the facts of this case the Court does not believe that a tax should be assessed against the taxpayer except in the manner provided generally for the taxation of capital gains in the complete liquidation of a corporation.

■■ Although it is true that "The incidence of taxation depends upon the substance of a transaction", Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 708, 89 L.Ed. 981, it is not always easy to determine what is "form" and what is "substance". Here there can be no question but that the taxpayer purchased the stock and not the assets of the Wescott Oil Company. The taxpayer purchased the stock (other than the twenty-five (25) shares he already owned) intending to liquidate the corporation, sell the assets, and thereby make a profit. There are no indications of wrongful acts or intentions on the part of the taxpayer or anyone else. If a taxpayer employs a lawful method of making a profit in a transaction he should be entitled to take advantage of any lawful method of salvaging as much of that profit as possible.

It does not appear that the taxpayer had any desire to acquire the assets of the Wescott Oil Company, as such, but only as part of his overall plan of acquiring the stock and liquidating the corporation at a profit. No authority has been cited and none found to the effect that merely because corporate stock is purchased with the intent of liquidating a corporation that then the general rules relating to the realization and reporting of capital gains and losses on corporate liquidations are no longer applicable. In the absence of good authority to that effect this Court is inclined to believe that the general rules applicable in such cases should be applied to determine the plaintiffs' liability.

It is argued in the alternative by the defendant that if the gain is properly recognized on the liquidation of the corporation, as contended by the taxpayer, that it should be treated as short term capital gain and not long term capital gain in the year it was actually received.

It is urged that the taxpayer's stock holding period terminated with the liquidating dividend of June 16, 1952, which was made pursuant to a plan of complete liquidation executed on June 13, 1952.

Counsel for the defendant admit they have found no case which determines the event which terminates the holding period for the stock "exchanged" upon corporate liquidation. As pointed out by counsel for plaintiff, the cases cited by counsel for the defendant as lending support for such theory involve cases where title had passed from the taxpayer at the time the exchange was said to have taken place.

■ It is the clear implication of several of the cases involving the reporting of gains or losses realized on corporate liquidation that whether or not an amount received on an installment liquidation is long or short term gain is determined by the length of time that has passed between the purchase of the stock and the actual receipt of the amount on which gain is realized. Cf. Letts v. Commissioner, supra. Here title to the stock did not pass when the first liquidating dividend was received by taxpayer pursuant to the plan of corporate liquidation and dissolution.

In accordance with the above and foregoing it is the opinion of this Court that plaintiffs properly reported the transaction in question for tax purposes and that they are entitled to a refund of the taxes paid under protest together with accrued interest thereon.

Counsel for the plaintiffs shall prepare Findings of Fact, Conclusions of Law, and a Proposed Judgment, serve copies of the same on counsel for the defendant and submit the originals to the Court.