400

HARTER BANK & TRUST CO. v.
GENTSCH.

SPONSELLER v. SAME.
Civil Actions Nos. 21653, 21654.

District Court, N. D. Ohio, E. D.
Feb. 12, 1945.

Albert B. Arbaugh, of Canton, Ohio, for applicants.

Francis B. Kavanagh, Asst. U. S. Atty., of Cleveland, Ohio, and Paul R. Russell and Andrew D. Sharpe, Sp. Assts. to Atty. Gen., for the Government.

FREED, District Judge.

In these actions, which by motion were consolidated for hearing, brief, argument and decision, plaintiffs, as executors and trustees of an insurance trust on behalf of the taxpayers, seek to recover alleged overpayments of income taxes for the calendar year 1936.

The taxpayers were two of the minority stockholders who owned 800.64 of 2151.36 shares outstanding of the Harvey Loehr Lumber Co. The Harvey Loehr Lumber Co. was organized in 1916 and was engaged in the wholesale and retail lumber and construction business in the City of Canton, Ohio. In 1936, a serious and acute dissension between those who held the minority and majority stock resulted in a discussion pertaining to a proposal that the majority group sell its stock to the minority, or, in the alternative, that the majority purchase the holdings of the minority. An agreement eventually was reached by which the corporation agreed to buy the stock of the minority. The reason for the change as to the purchaser is not disclosed either in the record or the briefs.

In order to arrive at the amount to be paid by the corporation, an appraisal was made of all the corporate assets. The corporation gave cash and physical assets for the stock.

The taxpayers received consideration valued at $31,021.50 as the result of the transaction, which sum was $19,357.58 more than they originally had invested in the corporation in 1916.

The taxpayer Renkert received $3,025.55 in excess of his original investment; and the taxpayer Wagner, $16,332.03 more than he originally invested.

The stock which was to have been obtained by the corporation first was intended to have been held as treasury stock. Subsequently, however, upon the suggestion of the corporation's auditor, to escape the Ohio State franchise tax upon treasury shares, by proper corporate action, the capital stock was reduced from 2160 shares to 1500 shares; and 660 of the 800.64 shares of stock received in the transaction here in question were cancelled.

The company continued to do business without change or curtailment of its previ-

ous activities. The assets delivered for the stock were of such nature as did not in any manner interfere with its operation.

The taxpayers, in their income tax returns, included the profits realized as a gain resulting from the sale or exchange of capital assets, and as taxable under Section 117(a) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 873, which provided for a tax of 30% of such gain.

The Commissioner of Internal Revenue, however, found that the gains were taxable under Section 115(c) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts page 868, as for a gain resulting from a distribution in partial liquidation of the corporation, which section provided for a tax on all, or 100% of such gain.

Section 115(c) of the Revenue Act here involved, provides in part:

"(c) Distributions in liquidation. Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117(a), 100 per centum of the gain so recognized shall be taken into account in computing net income, except in the case of amounts distributed in complete liquidation of a corporation. * * *"

Section 115(i) of the same Act defines a "partial liquidation" as follows:

"(i) Definition of partial liquidation. As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock."

■ The question as to what constitutes partial liquidation must be determined from the facts and attendant circumstances. Neither the law governing the matter of partial liquidation, nor the decisions of the courts interpreting it, recite specific circumstances and outline definite requirements which resolve the question posed. There are several decisions in which conditions are enumerated which establish partial

liquidation, and which, under the peculiar facts, decide what constitutes complete cancellation or redemption of all or a portion of the stock so as to bring about a partial liquidation. See: Stern v. Harrison, D.C., 55 F.Supp. 687, and numerous cases cited therein.

It is obvious from a reading of the reported cases that the decision in each is referable to its own stated set of facts, and that they lay down no tests under which the formula, provided by the statutory definition of "partial liquidation," can be applied with certainty.

In the final analysis, therefore, the court must look at the entire transaction in all its details, and from them find whether there was a sale or partial liquidation.

■ In this case it is manifest that there occurred nothing more than the purchase of stock from recalcitrant stockholders. There was no plan to terminate any of the corporation's activities, or to alter substantially the corporate structure, or to retire all of the stock of a particular preference. The company continued its business as it carried on before the transaction occurred.

The fact that subsequent to the agreement, the remaining stockholders, in order to reduce the state franchise tax, decided to reduce the capital stock and cancel a part of the shares purchased, does not transform a stock purchase and sale agreement into partial liquidation. Alpers v. Commissioner of Internal Revenue, 2 Cir., 126 F.2d 58.

It is urged by the Government that the factual conditions, which this court believes are determinative as constituting a sale, disclose a partial liquidation. It contends, in effect, that wherever a diminution in the capital or surplus results from the transaction in the transfer of stock by the stockholder to the corporation, it constitutes a partial liquidation. Neither in the applicable statutes, nor in the very decisions cited by the Government, may support be found for such construction. Had Congress intended to impose a tax on all of the gain realized from the distribution of the assets of a corporation to its stockholders, such intent could have been registered by so stating it. It chose to apply it to liquidation or partial liquidation only. Were the transaction here in question to be regarded as a partial liquidation, then the purchase of every share of stock by a corporation for

a price determined by appraisal of its actual value, could be so regarded.

The transaction which took place here is devoid of any characteristics that would constitute it a partial liquidation.

Judgment, therefore, will be rendered in accordance with this opinion.